## NO-LEAK-O PISTON RING CO. v. NORRIS et al.

(Circuit Court of Appeals, Fourth Circuit. November 1, 1921.)

No. 1903.

1. **Copyrights ☞5—Pamphlet containing list of motor vehicles, with number and dimensions of piston rings, held subject to copyright.**

A pamphlet printed and circulated by a manufacturer of piston rings used for replacements, containing a list of the different makes of motor vehicles, giving for each year the model, bore, grooves, size, and number of rings, compiled from original sources at considerable expense, the pamphlet being designed primarily for advertising purposes, but containing information not otherwise obtainable, useful to repair shops and others, *held* subject to copyright.

---

☞For other cases see same topic & KEY-NUMBER in 'all Key-Numbered Digests & Indexes

**2. Copyrights ⊕⊃28—Deposit of copies with application held compliance with statute.**

The deposit in the Copyright Office, with application for copyright, of two copies of a pamphlet containing the required notice, out of the first number received from the printer and before their circulation, *held* a substantial compliance with Copyright Act, § 12 (Comp. St. § 9533).

**3. Copyrights ⊕⊃22—Not invalid because the author was an employé.**

A copyright for a pamphlet *held* not invalid because the compiler, in whose name as author the copyright was taken, did the work as employé of another.

**4. Copyrights ⊕⊃87—When damages for infringement are in discretion of court.**

Where the damages for infringement of a copyright are not ascertainable, the compensation to which the owner is entitled is committed to the discretion of the trial judge.

Appeal from the District Court of the United States for the District of Maryland, at Baltimore; John C. Rose, Judge.

Suit in equity by William K. Norris and others against the No-Leak-O Piston Ring Company. Decree for complainants, and defendant appeals. Affirmed.

For opinion below, see 271 Fed. 536.

John E. Cross, of Baltimore, Md., for appellant.

John F. Green, of St. Louis, Mo., for appellees.

Before KNAPP, WOODS, and WADDILL, Circuit Judges.

KNAPP, Circuit Judge. In this suit for infringement of a copyright, plaintiffs had a decree and defendant appeals.

Both parties manufacture and sell piston rings for replacement purposes; they are active competitors in that business. Beginning in 1913, and each year since down to 1919, the plaintiffs, or their predecessors in title, have published and distributed a printed pamphlet entitled "Dimensions of Piston Rings." This pamphlet lists the various makes of motor vehicles in alphabetical order, and gives for each the year, model, bore, groove, size, and number of rings, and the like. It appears to be an excellent advertisement, and also a valuable reference book for repairmen to use in ordering piston rings for their customers. Indeed, without the data furnished by such a compilation, it would be practically impossible for dealers to keep a supply of rings in stock. Each yearly issue of this pamphlet has been copyrighted, and it is the issue of 1919 which defendant is charged with infringing. For the purpose of detecting infringers, plaintiffs have, for some years past, included in their annual lists a number of fictitious or "trap" models; that is, non-existent cars, and rings that are never used. In the edition of 1919 there were 12 of these decoys.

Defendant's pamphlet, styled "Piston Ring Size Directory," was issued about the 1st of June, 1920. In December of the previous year, the Motor World, a trade journal, had published a catalogue of piston ring dimensions. Except that models prior to 1916 were omitted and passenger cars separated from trucks, this catalogue was a reproduction of plaintiffs' compilation, including 10 of the 12 fictitious models.

⊕⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The Motor World admits that it got all the data for its publication from the copyrighted pamphlet issued by plaintiffs. Defendant's pamphlet was prepared by taking the Motor World's catalogue, recombining passenger cars and trucks, thus giving its list the same general character as that of plaintiffs', and adding information obtained by it regarding piston rings for some of the 1920 models, which, of course, did not appear in plaintiffs' 1919 edition. Some 55,000 copies were printed, of which 10,000 to 15,000 appeared to have been distributed at the time of the trial. The decree below finds plaintiffs' copyright valid, and infringed by defendant's publication, grants the usual injunction in such cases, directs delivery of the copies on hand to the marshal, to be by him destroyed, and awards damages in the sum of $3,000, with counsel fees of $750 in addition to taxable costs.

[1] It is argued that plaintiff's pamphlet is not covered by the copyright statutes (Comp. St. §§ 9517-9524, 9530-9584), and therefore not entitled to protection, but the argument is quite unconvincing. This pamphlet is much more than an ordinary price list or table of figures. It is a compilation from primary sources of a great number of facts which, so far as appears, had not before been available to the trade, and in that respect, at least, is an original production. It certainly displays as much originality as a city directory, which frequently has been held entitled to copyright. Williams v. Smythe (C. C.) 110 Fed. 961; Trow Directory Co. v. U. S. Directory Co. (C. C.) 122 Fed. 191. Moreover, the information thus made public was obtained only by considerable effort and expense. The proof shows that it cost plaintiffs some $3,000 to get the data for this 1919 issue, and about $3,500 to have it printed. Whilst it serves and was intended to advertise the plaintiffs' wares, it at the same time furnishes information of real value to the numerous persons who desire to procure piston rings, or have occasion to keep the various kinds in stock, and so performs a distinctly useful service. In short, we deem it is not doubtful that the pamphlet in question is copyrightable, as it has been held to be by several district courts in which similar suits have been brought. For authority it is sufficient to refer to the cases cited in Campbell v. Wireback (C. C. A.) 269 Fed. 372, 374.

[2] But defendant says that in any case the copyright in suit is invalid for failure to comply with the statute, in that the application, with deposit of two copies, was made before, and not, as the act provides (section 12 [Comp. St. § 9533]), after publication, the application and deposit having been made on the 4th of August and the publication some time between the 6th and 10th of that month. The fact appears to be that 50 copies at least were received from the printer on the 4th, of which 2 were mailed that day, with the application, to the Register of Copyrights, and the balance kept by plaintiffs for their own use or sent to their branch offices. Then followed the shipment of 50 copies to each of their "field representatives," and later a general distribution to the trade, which began between the 6th and 10th. We are of opinion that this was a substantial compliance with the statute, and that the contrary contention is wholly without merit. Directly in point are Bel-

ford v. Scribner, 144 U. S. 488, 12 Sup. Ct. 734, 36 L. Ed. 514, and Cardinal Film Corp. v. Beck (D. C.) 248 Fed. 368.

[3] Defendant also says that the copyright is invalid because the application therefor incorrectly states that Paul R. Dolvin was the author of the pamphlet, whereas in fact he was a mere employé of plaintiffs. But in the nature of the case the "author" of such a publication is the one who gets the facts and puts them together in the form desired; and this Dolvin did. He had entire charge of the compilation from first to last, and did a large part of the work himself. He devised the form sheets and form letters used, conducted the correspondence, made numerous inquiries by wire, and arranged the data in proper order. We think it clear that he was the author of the pamphlet, and correctly so named in the application for copyright. Dewitt v. Brooks, Fed. Cas. No. 3851; Roberts v. Myers, Fed. Cas. No. 11,906.

[4] We are not persuaded that the award of $3,000 was excessive. Where the damages are indirect and cannot be ascertained, as in this case, the compensation to which the injured owner of a copyright is entitled is committed to the discretion of the trial judge. It is measured, as the Supreme Court says in Westermann Co. v. Dispatch Co., 249 U. S. 100, 39 Sup. Ct. 194, 63 L. Ed. 499, by "the court's conception of what is just in the particular case, considering the nature of the copyright, the circumstances of the infringement, and the like." Compared with awards in similar cases, which have been sustained on appeal, the amount allowed in this case, taking all the circumstances into account, seems plainly within the limits of sound discretion. Westermann Co. v. Dispatch Co., supra; Hendricks v. Thomas Pub. Co., 242 Fed. 37, 154 C. C. A. 629; Campbell v. Wireback (C. C. A.) 269 Fed. 374. Moreover. and the fact is not without significance, the damages were fixed at $3.000 on the assumption that only 10,000 to 15,000 copies of the infringing pamphlet had been distributed, which was defendant's testimony at the trial; but it turned out, as a stipulation of record concedes, that some 30,000 copies had been distributed prior to the commencement of this suit. It is enough to say, without further comment, that we find no occasion to interfere with the award of damages, or with the counsel fee allowed.

The decree appealed from will be affirmed.