FREEDMAN v. MILNAG LEASING CORPORATION et al.

District Court, S. D. New York.
June 22, 1937.

O'Brien, Driscoll & Raftery, of New York City (Arthur F. Driscoll and T. Newman Lawler, both of New York City, of counsel), for complainant.

William Klein, of New York City, for respondents Milnag Leasing Corporation and Louis Kramer.

PATTERSON, District Judge.

The suit is one in equity for infringement of statutory copyright. It was tried on the merits. Some years ago the plaintiff made up his mind to publish a map of New York. He engaged one Spofford, an artist, to make a drawing of the city as it would appear from a point above the harbor south of Manhattan. Spofford made the drawing. The more prominent buildings were put in on an enlarged scale; the names of streets, piers, districts, buildings, and so on were shown. The map was on a large sheet, folded into panels so as to be carried around conveniently, in the manner of automobile maps. On the back panels was printed a great deal of information concerning churches, parks, museums, amusements, foreign consulates, and matters of particular interest to persons unfamiliar with the city. This information the plaintiff put together from various sources. The map was published in January, 1932, with notice of copyright on front and back. In March, 1932, the plaintiff deposited copies of the map in the copyright office for registration of copyright. In the application for registration he described the work as a map and gave Spofford as the author.

In January, 1933, the plaintiff made a contract to furnish 100,000 maps to the defendant Milnag Leasing Corporation, a company owning and operating the Hotel Edison. Changes giving prominence to the Hotel Edison were made both in the map and in the printed matter on the back, but in the main the 1933 map was like the 1932 map. A second contract for 200,000 additional maps was made in July, 1933, and these maps also were delivered to the Milnag company. The Hotel Edison maps were published by the plaintiff in March, 1933, with copyright notice on face and on back, and application for registration in the copyright office was made in May, 1933. The plaintiff's application for registration listed the work as a book, called the Edison Hotel Supervue Map and Guide of New York, with the plaintiff as author and proprietor. The plaintiff had no further dealings with the Milnag company.

In 1934 the Milnag company put out the map alleged to infringe. For the map it took an aerial photograph of New York City, giving much the same view as the drawing used by the plaintiff. Names and lines were added by artists employed for the purpose. The greater part of the guide on the back of the map was taken bodily from the guide on the back of the plaintiff's maps. Most of it is the same, word for word, and several errors made by the plaintiff are repeated in the guide of the Milnag company. The latter map, to the number of 165,000, was printed by the defendant National Process Company on assurances by the Milnag company that it did not infringe the plaintiff's map.

1. The plaintiff's map and guide material of 1932 were copyrightable, the map as an original work, the guide material as a compilation or arrangement of matters in the public domain. Copyright Act, §§ 5 as amended, 6 (17 U.S.C.A. §§ 5, 6); Gen-

eral Drafting Co. v. Andrews, 37 F.(2d) 54 (C.C.A.2). The changes and new matter put into the map and guide material of 1933 were also copyrightable, although of course the 1932 copyright as to matters common to both maps was not enlarged. On the trial the Milnag company did not deny that it had copied the plaintiff's guide material. The similarities and the common errors are so striking that denial would have been futile. The defense is that there was no copying of the map itself and that nothing but the map was in fact copyrighted. It is said that the copyright as submitted for registration in 1932 was only on a map made by Spofford, that the guide was not made by Spofford, that the guide was therefore thrown into the public domain and could not be reacquired as the plaintiff's property by means of the copyright of 1933.

There was no copying of the map itself. The plaintiff's map was a drawing, the defendant's an actual photograph. So the question is whether the plaintiff's copyright of his first map was broad enough to protect the guide that appeared on the back.

2. Statutory copyright is obtained by publication of the work with notice of copyright, but may be lost unless the publication is followed by deposit of copies of the work in the copyright office. Copyright Act, §§ 9, 12 as amended, 13 (17 U.S. C.A. §§ 9, 12, 13). When the plaintiff published the first map, he put a sufficient copyright notice on the side of the sheet displaying the map; he put a like notice on the side containing the guide information. No person examining the sheet could have been in any doubt that the proprietor claimed copyright both as to the map itself and as to the informative statements concerning the same territory that was printed on the other side. The plaintiff later deposited two copies in the copyright office. It is said that there was a flaw in the deposit, that the work was described there as a map by Spofford, that accordingly the copyright covered simply the map. I will not say that the plaintiff erred in describing the entire work as a map rather than as a book. Primarily it was a map. His intention to have his copyright cover the entire product is plain from his published notice of copyright. The fact that in applying for the 1932 registration he described the work as Spofford's map does not exclude from the copyright the supplemental matter on the same sheet relative to the same piece of the earth's surface as depicted in the drawing.

It will not do to be overstrict as to the technicalities of the Copyright Act. The act itself in section 5, as amended (17 U.S. C.A. § 5) provides that error in classification shall not impair copyright protection. If the statute is substantially and in good faith complied with by a person seeking copyright protection and if others have not been misled into thinking that the work is not copyrighted, it is enough. Campbell v. Wireback, 269 F. 372 (C.C.A.4); No-Leak-O Piston Ring Co. v. Norris, 277 F. 951 (C. C.A.4); Fleischer Studios, Inc., v. Freundlich, 73 F.(2d) 276 (C.C.A.2); Southern Music Co. v. Bibo-Lang, 10 F.Supp. 972 (D.C.N.Y.). In my opinion the 1932 copyright covered the guide on the back of the sheet as well as the drawing itself.

3. The Milnag company makes an argument that the 1932 copyright was void because the plaintiff's deposit of two copies in the copyright office was not made "promptly" after publication. Section 12 of the act, as amended (17 U.S.C.A. § 12) is to the effect that deposit for registration in the copyright office shall be made "promptly" after publication with notice of copyright. This provision, however, must be read with the further provision in the same section that no suit for infringement shall be maintained until deposit shall have been made, and with the provision in section 13 (17 U.S.C.A. § 13) that in case deposit in the copyright office shall not be made within three months after demand by the register of copyrights (the period of six months being set for certain cases), the proprietor shall lose his copyright and shall be liable to fine. It is clear therefore that mere failure to deposit promptly after publication does not invalidate the copyright. The fact that the plaintiff delayed for two or three months in applying for registration does not prejudice his rights.

Both copyrights of the plaintiff were valid. Both were infringed by the defendants. The plaintiff should have an injunction against further infringement by each of defendants. As for damages, there can be no doubt that the plaintiff suffered a loss. The damages will be fixed at $2,000, under section 25 of the act, as amended (17 U.S.C.A. § 25), such sum to be paid by the Milnag Leasing Corporation. There will be an allowance of $1,000 counsel fees,

under section 40 (17 U.S.C.A. § 40), to be paid as part of the costs by the defendant Milnag Leasing Corporation.