**RUSS BERRIE & COMPANY, INC., Plaintiff,**

v.

**JERRY ELSNER CO., INC., Defendant.**

**No. 79 Civ. 5348–CSH.**

United States District Court, S. D. New York.

Jan. 7, 1980.

Sheldon Palmer and Peter L. Berger, New York City, for plaintiff; Henry R. Lerner, Levisohn, Niner & Lerner, New York City, of counsel.

Harold James, James & Franklin, P. C., New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

This case is before the Court on plaintiff's motion for preliminary injunction, Fed.R. Civ.P. 65(a),[1] respecting claims of copyright infringement, 17 U.S.C. § 501 et seq., and common law trademark infringement under the Lanham Act, 15 U.S.C. § 1125(a). Defendant cross moves for summary judgment on the copyright claims. Fed.R.Civ.P. 56. The Court has subject matter jurisdiction over the claims raised herein under 28 U.S.C. § 1338(a); personal jurisdiction over the defendant is uncontested and venue is proper in this forum. 28 U.S.C. § 1400(a); § 1391(b), (c).

Before a preliminary injunction will issue, the movant must demonstrate likely irreparable harm and either probable success on the merits or serious litigable questions going to the merits coupled with a balance of hardships tipping decidedly in the movant's favor.[2] E. g., Jackson Dairy, Inc. v. H. P. Hood & Sons, 596 F.2d 70, 72 (2d Cir. 1979). Summary judgment, of course, requires that there is no genuine issue as to any material fact so that the Court may enter judgment as a matter of law. Rule 56(c).

For the following reasons, I conclude that plaintiff is entitled to a preliminary injunction on its Lanham Act claims; and that defendant is entitled to summary judgment dismissing the copyright infringement claims.

### I.

### FINDINGS OF FACT

Plaintiff Russ Berrie & Co., Inc. ("Berrie"), a New Jersey corporation with its principal place of business in that State, is the second largest manufacturer of stuffed toy animals in the United States. In this suit, Berrie charges defendant Jerry Elsner Co., Inc. ("Elsner"), a medium sized competitor incorporated in New York, with infringing three of its copyrighted plush toy designs—a stuffed Santa Claus figure, style # 195; a plush Christmas teddy bear, trimmed and capped in red, style # 181; and a thumb-sucking stuffed gorilla, style # 595. Elsner's use of the name "Congo" in connection with sales of the latter toy is also alleged to infringe Berrie's trademark "Gonga" used for its gorilla.

*Santa and Christmas Bear*

Berrie is the holder of certificates of copyright registration, issued September 12, 1979, and bearing numbers V.A. 33–376 and

---

1. The parties have been content to rely on affidavits, exhibits, briefs and oral argument; accordingly no evidentiary hearing has been held. See, e. g., Jacobson & Co., Inc. v. Armstrong Cork Co., 548 F.2d 438, 442 (2d Cir. 1977).

2. In infringement actions in this Circuit, entitlement to preliminary relief follows from a demonstration of probable success on the merits, i. e., a prima facie case of infringement, without the need for a specific showing of likely irreparable harm. See, e. g., Amer. Home Products v. Johnson Chemical Co., 589 F.2d 103, 106 (2d Cir. 1978) (trademark infringement); R. Dakin & Co. v. Charles Offset Co., Inc., 441 F.Supp. 434, 439 (S.D.N.Y.1977) (copyright infringement). Of course as the likelihood of success diminishes, the need for preliminary relief must be correspondingly high. Cf. Mattel, Inc. v. S. Rosenberg Co., Inc., 296 F.Supp. 1024 (S.D.N.Y.1968) (in copyright action, anything less than strong likelihood of success warrants denial of preliminary injunction).

V.A. 33–377, respectively, for its Santa and Christmas bear.[3] Both toys were conceived by Berrie's design department in February, 1978, executed by Berrie's manufacturing contractors in the Orient, and first published on September 8, 1978. The toys bear the requisite notice of copyright when offered for sale.

Defendant Elsner also puts out a stuffed Santa figure and a Christmas bear. One accused toy, Elsner's 1979 Santa, style # 823, is much like Santa figures in its product line since 1976 and 1977, with some variations in ornamentation and definition of the limbs.

Elsner's accused Christmas bear, style # 832, is a seasonal version of a stuffed teddy that defendant has produced since 1970. Defendant's traditional teddy is dark brown in color. When the Christmas bear was made up in that color originally, the dark brown did not blend properly with the red body and hat given the Christmas version. Accordingly, defendant's president and founder, Jerry Elsner, directed that the Christmas bear be made in a beige color.

Based on its 1979–80 wholesale catalogue, plaintiff's Santa and bear sell for $21 per dozen. Defendant's current price list shows its Santa wholesaling for $24 per dozen and its bear for $28.80 per dozen.

*The Gorillas*

In 1978, Berrie adopted and began using the name "Gonga" as a trademark for its stuffed gorilla. Berrie advertises its toy under that mark and, since November 1978, has sold its gorilla nationwide with the trademark "Gonga" appearing both on the label affixed to the toy and on a wooden plaque hanging around the gorilla's neck.

Berrie's Gonga is a copy of a pre-existing uncopyrighted work, a Japanese gorilla named "Gori-Gori." On a trip to the Orient in April 1978 taken by plaintiff's president and founder, Russell Berrie, and its chief designer Beverly Cerepak, the latter purchased one of the Japanese gorillas in Hong Kong. Mr. Berrie then brought the gorilla to his Taiwanese manufacturer, Sang Lan Enterprises, and requested that a thumb-sucking Berrie gorilla be made, but with certain changes. Mr. Berrie recollects that the gorilla he viewed in 1978 lacked eyebrows, and had a brown and white nose. Mr. Berrie's directions to Sang Lan were to change the Japanese gorilla's plush covering and stuffing; produce a somewhat smaller "bean bag" version; add eyebrows; eliminate the ball and chain that the Japanese gorilla wore around one ankle; use a neck plaque reading "Beware, Gonga Loves You"; alter the skin tone and facial dimensions; and paint the nose all brown.

Sang Lan thereafter produced the original versions of plaintiff's Gonga, with notice of copyright printed on the labels affixed to the toys. Subsequently, Berrie determined that it needed an additional manufacturing source for its Gonga. Sometime prior to September 1978, Berrie sent the Sang Lan Gonga to a second manufacturer, Good Choice Co., Ltd. of Taiwan, to solicit that company's samples of the product. The Good Choice product proved unsatisfactory, and Berrie ultimately discontinued Good Choice as a supplier of Gonga.

Berrie first published its Gonga on November 14, 1978, by selling the item with the requisite copyright notice. An application for copyright therein was made in April 1979. Although specifically directed to provide such information, the application

---

3. The copies of plaintiff's registrations respecting Santa and the Christmas bear which have been submitted to the Court, Complaint Exhibits D & F, contain what is obviously an inadvertent error that apparently has gone unnoticed by the parties. Certificate V.A. 33–376 was issued for plaintiff's Santa, style # 195. Yet the nature of the work is described as a soft sculpture of Christmas bear. Likewise certificate V.A. 33–377, issued for "Jolly," the Christmas bear, style # 181, describes the subject work as a soft sculpture of Santa Claus bean bag.

The applications were filed on the same date, and obviously together as is evident from the consecutive registration numbers. Apparently, plaintiff's filing agent transposed the "nature of work" statements. While this error may require correction of the registration statements, it does not affect the validity of the copyrights. 1 M. Nimmer, Nimmer on Copyright § 94 ("Nimmer").

failed to disclose that Berrie's Gonga was a derivative work based on the pre-existing public domain Japanese "Gori-Gori."[4] On the basis of Berrie's application, a certificate of copyright registration V.A. 25–275 was subsequently issued, effective February 5, 1979.

In October 1977, Jerry Elsner visited Japan, and like Russell Berrie, was taken with a thumb-sucking Japanese gorilla, wearing a wooden neck plaque that read "Danger Gori-Gori For Japan." Mr. Elsner obtained a brochure from the selling company at that time which illustrated the gorilla he had seen. The Japanese Gori Gori on the market in 1977, as is evident from that brochure, had eyebrows, an all brown nose, and wore a ball and chain around its ankle.

In or about October 1978, on a visit to his Taiwan supplier, Good Choice Co. Ltd., Mr. Elsner was offered a stuffed gorilla similar to the Japanese item he had seen in 1977. Good Choice apparently represented that the item it was offering was a copy of the Japanese gorilla, which was in the public domain. This was confirmed recently in a letter from Good Choice to Elsner dated September 15, 1979. The Good Choice gorilla was offered in three colors and minus the neck plaque and ankle shackles. Good Choice's catalogue depicting its gorilla, and an actual Good Choice gorilla have been submitted. Affixed to the latter is a label identifying Good Choice as the manufacturer; no copyright notice is included.

Mr. Elsner states that to his knowledge the Japanese Gori Gori has been sold in this country since 1977. A specimen recently purchased at F.A.O. Schwarz, bearing a Sakai & Co., Ltd., Japan, label, without copy-

right notice, and with a neck plaque but no ball and chain, is in evidence. Elsner's accused gorilla, style # 894, is manufactured by Good Choice. The Elsner gorilla is sold without the wooden neck plaque found on both the Japanese Gori Gori made by Sakai, and the Berrie gorilla. However, Elsner sells its gorilla to the trade under the name "Congo," although that name does not appear on the product itself. Apparently, the "Congo" designation is not used at the retail level. Both plaintiff's and defendant's gorillas currently wholesale at $36 per dozen. The competing gorillas are marketed through similar channels of trade. Both parties utilize catalogues to sell to wholesale customers and the competing gorillas were both offered for sale to the trade at the New York Gift Show in August 1979.

By letter of August 15, 1979 Berrie put Elsner on notice of the alleged infringements which form the basis of this suit.

## II.

## THE COPYRIGHT CLAIMS

*The Applicable Law*

In the copyright context, an infringement claim turns on two elements: plaintiff must establish its ownership of a valid copyright and defendant's copying. *Novelty Textile Mills v. Joan Fabrics Corp.*, 558 F.2d 1090, 1092 (2d Cir. 1977) (citing 2 Nimmer on Copyright § 141, p. 611 (1976)). A prima facie case, sufficient if unrebutted to support interlocutory relief, is made out on the first element by submission of a certificate of copyright registration, which carries with it a presumption of copyright validity and ownership, and is prima facie

---

4. The copyright application form requests the following information at Item 6:

"6. COMPILATION OR DERIVATIVE WORK: . . .

"[PREEXISTING MATERIAL]: (Identify any preexisting work or works that this work is based on or incorporates) . . .

"[MATERIAL ADDED TO THIS WORK]: (Give a brief, general statement of the material that has been added to this work and in which copyright is claimed.)"

Berrie indicated that Item 6 was not applicable to its claim. See Complaint Exhibit B.

The purpose of Item 6 on the application form clearly is to permit the Copyright Office to make a determination "whether or not the material being offered does or does not have that degree of originality required for a valid copyright. To do this, the Copyright Office must know what is in the public domain, otherwise, it cannot evaluate and decide whether 'the author, through his skill and effort, has contributed a distinguishable variation from the older works.' " *Vogue Ring Creations, Inc. v. Hardman*, 410 F.Supp. 609 (D.R.I.1976).

evidence of the facts stated therein. *Id.* at 1092 n.1; 17 U.S.C. § 410(c). Success is likely on the second necessary element if, based on the average lay observer test, see text at p. 986, *infra,* there is substantial similarity between the copyrighted and accused works, and some evidence that defendant had access to plaintiff's work. *Novelty, supra.* These two factors—substantial similarity and access—are the "*sine qua non* to a finding of copying," *id.* at 1092 n.2, and establish a prima facie case on the second element. It then becomes incumbent upon defendant to rebut that prima facie case by demonstrating, for example, its own independent creation of the accused article or its copying not of plaintiff's product but of work in the public domain.

■ Turning to the particulars of this case, the parties are on common ground as to the relevant legal principles. Both sides agree that plush toys such as are here involved are copyrightable as sculptural works of art. 17 U.S.C. § 102(a)(5) (Act of 1976) (predecessor section previously codified as § 5(g) of 1909 Act); 37 C.F.R. § 202.3(a)(iii); *see, e. g., Uneeda Doll Co., Inc. v. Goldfarb Novelty Co., Inc.,* 373 F.2d 851 (2d Cir. 1967); *Samet & Wells, Inc. v. Shalon Toy Co., Inc.,* 429 F.Supp. 895 (E.D. N.Y.1977), *aff'd,* 578 F.2d 1369 (2d Cir. 1978); *Fisher-Price Toys v. My-Toy Co., Inc.,* 385 F.Supp. 218 (S.D.N.Y.1974). Both agree that a validly obtained statutory copyright protects the holder thereof against copying by others, not of the idea underlying the work but rather of the particular expression of that idea embodied in the copyrighted item. *E. g., Reyher v. Children's Television Workshop,* 533 F.2d 87 (2 Cir. 1976); *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.,* 274 F.2d 487 (2d Cir. 1960). Both sides agree that works in the public domain, i. e. uncopyrighted works, may be freely copied by all, but that one may bring sufficiently original variation to a public domain work to render the new version copyrightable in its own right as a derivative work. 17 U.S.C. § 103; *e. g., Alfred Bell & Co. v. Catalda Fine Arts, Inc.,* 191 F.2d 99, 102–03 (2d Cir. 1951). In such circumstances, copyright protection extends only to the new material contributed to the prior work. 17 U.S.C. § 103; 1 M. Nimmer, *Nimmer on Copyright* § 41 ("Nimmer"); *Millworth Converting Corp. v. Slifka,* 276 F.2d 443 (2d Cir. 1960); *Lauratex Textile Corp. v. Citation Fabrics Corp.,* 328 F.Supp. 554 (S.D.N.Y.1971); *Concord Fabrics Inc. v. Generation Mills, Inc.,* 328 F.Supp. 1030 (S.D.N.Y.1971); *Blazon, Inc. v. DeLuxe Game Corp.,* 268 F.Supp. 416 (S.D.N.Y. 1965).

*Santa and Christmas Bear*

■ Plaintiff has made a prima facie showing of ownership of valid copyrights on the Santa and Christmas bear, by virtue of its certificates of copyright registration as to these two items. 17 U.S.C. § 410(c) (Act of 1976). I reject defendant's suggestion (gleaned from statements in Mr. Berrie's original affidavit which were subsequently clarified in his reply affidavit) that Berrie's bear may have been a new version of a prior uncopyrighted work sold by Berrie. The copyright registrations stand unrebutted and plaintiff is entitled to the presumption of validity and ownership that flows therefrom.

Plaintiff, however, does not succeed on the second aspect of the claim, that is, defendant's copying of its Santa and/or bear. Berrie has failed to adduce any evidence of access, and argues instead that in certain circumstances proof of access may be dispensed with, citing *Heim v. Universal Pictures Co., Inc.,* 154 F.2d 480 (2d Cir. 1946) and *Jones v. Supreme Music Corp.,* 101 F.Supp. 989 (S.D.N.Y.1951). These two cases in turn relied on *Arnstein v. Porter,* 154 F.2d 464 (2d Cir. 1946). In his majority opinion (concurred in by Judge Learned Hand), Judge Frank wrote in relevant part:

"As to the first [element of an infringement claim]—copying—the evidence may consist (a) of defendant's admission that he copied or (b) of circumstantial evidence—usually evidence of access—from which the trier of the facts may reasonably infer copying. Of course, if there are no similarities, no amount of evidence of access will suffice to prove copying. If

there is evidence of access and similarities exist, then the trier of the facts must determine whether the similarities are sufficient to prove copying. . . . *If evidence of access is absent, the similarities must be so striking as to preclude the possibility that plaintiff and defendant independently arrived at the same result.*" *Id.* at 468 (emphasis added). Having taken on the burden of showing *striking* similarity, plaintiff in my view fails to establish even *substantial* similarity.

"'Substantial similarity' is to be determined by the 'ordinary observer' test. . . . [T]here is substantial similarity where 'the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same.' *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.,* 274 F.2d 487, 489 (2d Cir. 1960). . . . [T]he test [is] 'whether an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work.' *Ideal Toy Corp. v. Fab-Lu Ltd.,* 360 F.2d 1021, 1022 (2nd Cir.) And, of course, by definition '[t]he copying need not be of every detail so long as the copy is substantially similar to the copyrighted work.' *Comptone Co. v. Rayex Corp.,* 251 F.2d 487, 488 (2d Cir. 1958); *United Merchants & Manufacturers, Inc. v. K. Gimbel Accessories, Inc.,* 294 F.Supp. 151, 154 (S.D.N.Y.1968)." *Novelty, supra,* 558 F.2d at 1093 (footnotes omitted).

The competing Santas to be sure have something of the same aesthetic appeal. Both wear the traditional red suit and floppy cap, trimmed in white, black boots and white beard. Both sport the requisite "nose like a cherry." But, these features are common to all Santas, and various of the Elsner Santas that predated Berrie's copyrighted version possessed similar details. What sets the toys apart rather strikingly are their facial features. Elsner's is a wide-eyed, almost startled looking Santa; Berrie's a sleepy-eyed more whimsical fellow. The average observer would note the difference immediately.

I conclude that the Santas are not substantially similar; *a fortiori* they are not so strikingly similar as to preclude the inference that both parties arrived independently at the same result. And even were such an inference appropriate, it has been persuasively overcome by the credible evidence of defendant's independent creation.[5] I find Elsner's Santa to be a direct descendant of Santas in its own line, which long predated the first publication of Berrie's copyrighted Santa.

Additionally, whatever the quantum of similarity between the Santas, any inference of copying is materially weakened absent any proof regarding access, for at least two of the reasons alluded to by Professor Nimmer:

"Ordinarily in order to prove copying by the defendant, the plaintiff must prove access as well as substantial similarity. If, however, the similarity between plaintiffs [sic] and defendant's works is sufficiently striking and substantial the trier of fact may be permitted to infer copying notwithstanding the plaintiff's failure to prove access. It has been said, however, that absent access the similarities must be so striking as to preclude the possibility that defendant independently arrived at the same result. Furthermore, *even if there is a very striking similarity between the two works, copying may not be inferred without proof of access in the following circumstances: if both plaintiffs [sic] and defendants [sic] works are trite or commonplace* ; if plaintiff fails to establish prior creation; *or if the identity between the two works may arise from identical functional considerations rather than from copying* ; or perhaps where the defendant offers direct and highly

---

5. Mr. Elsner's uncontested assertion that:

"In the 34 years that Defendant has been in business, both as a corporation and as an individual proprietorship, it has never been sued for copyright infringement or unfair competition or, indeed for any reason whatsoever, prior to the institution of this litigation." Elsner's Affidavit at ¶ 34.

is relevant on the issue of independent creation. 2 Nimmer § 141.2 n.32–33.

persuasive evidence that access could not have occurred." 2 Nimmer § 142.2 (footnotes omitted) (emphasis added).

The Christmas bears present much the same situation. The similarities between them end with the observation that both are small stuffed teddy bears wearing red suits and caps. They differ in construction, facial features, coloring and trim. Striking similarity is not present; and no proof of access has been offered. And while substantial similarity presents a closer question, I am persuaded that Elsner independently created its Christmas teddy without reference to Berrie's work and on the basis of its own preexisting bear.

In sum, I conclude that defendant is entitled to summary judgment dismissing the claims of infringement as to Santa and the Christmas bear.

■ Alternatively, I hold that absent some evidence respecting access, plaintiff has failed to demonstrate likely success on the issue of copying. Absent such a prima facie showing, a preliminary injunction should not issue, *Mattel, Inc., supra,* 296 F.Supp. at 1026; *G. P. Putnam's Sons v. Lancer Books, Inc.,* 239 F.Supp. 782 (S.D.N.Y.1965); especially where as here the showing as to irreparable harm and the balance of hardships is minimal.

Mr. Berrie's affidavit, the only evidence on this issue, contains nothing more than generalized statements respecting possible lost profits and good will. *Compare Novelty, supra,* 558 F.2d at 1092, 1094 (evidence of continuing lost sales of $11,000 per week beginning with the introduction of defendant's product). Plaintiff's suggestion that its wholesale customers might be harmed by their competitor's sale of cheaper "knocked-off" versions of Berrie's works is persuasively overcome by the fact that Elsner's Santa and bear sell at higher wholesale prices than do Berrie's. Elsner is a well-established ongoing business with substantial tangible assets. Defense counsel represents that his client is financially able to respond in damages. While the right to an injunction normally follows from a finding of infringement, in this case, assuming the

infringement issue to be reopened and plaintiff ultimately to succeed, Elsner's sales of the accused items would be capable of precise ascertainment as would Berrie's expected profits on that volume of sales. Finally, due to the timing of the litigation, Berrie's losses during the 1979 Christmas season attributable to the alleged infringement are now a *fait accompli.* The hardships do not tip in Berrie's favor. For these reasons as well, I would be inclined to deny interlocutory relief on this aspect of the case.

*The Gorillas*

Berrie fares no better on its copyright claim as to Gonga. The prima facie case established by submission of the federal copyright registration has been successfully rebutted by the credible evidence that Berrie's gorilla was itself a copy of a public domain work. *E. g. R. Dakin & Co. v. A. & L. Novelty Co., Inc.,* 444 F.Supp. 1080 (E.D.N.Y.1978); *Covington Fabrics Corp. v. Artel Products, Inc.,* 328 F.Supp. 202 (S.D.N.Y.1971); *Gardenia Flowers, Inc. v. Joseph Markovits, Inc.,* 280 F.Supp. 776 (S.D.N.Y.1968); 2 Nimmer § 139.2. Yet plaintiff's application failed to disclose this crucial fact, which was known to Mr. Berrie at the time. The only explanation proffered for that material omission is the following:

"A small number of designs are created by changing pre-existing items, and it is, and has always been, my belief that when we make a number of changes in such a pre-existing item, the newly designed item is considered to be our 'wholly original' design, and it is in that context I considered 'Gonga.' Therefore, our company through our agent, filed an application to register the copyright 'Gonga', and it never occured [sic] to me to tell him about the existence of the prior Japanese stuffed gorilla, because as I have just said, I considered by design to be wholly original." Russell Berrie Reply Affidavit at ¶ 9.

■ Mr. Berrie's asserted belief that Gonga was his wholly original design is disingenuous given the striking similarity between Gonga and the Japanese Gori Gori.

Based on the tangible evidence presented by Elsner as to the ornamentation of the Japanese gorilla as early as 1977, I cannot credit Mr. Berrie's recollection that the Gori Gori he saw and "modified" in 1978 lacked eyebrows and brown nose. While I do accept Mr. Berrie's assertions that he made use of a different plush and stuffing; changed the wording of the neck plaque; and made the all but imperceptible alterations in skin tone and facial dimensions, those changes, even crediting the eyebrow and nose contentions, · were surely not enough to support a good faith belief that Berrie had created a wholly original design. Nor am I persuaded that such modifications are of sufficient originality to support a copyright. Although the necessary quantum of originality is minimal—

> "All that is needed to satisfy both the Constitution and the statute is that the 'author' contributed something more than a 'merely trivial' variation, something recognizably 'his own.' Originality in this context 'means little more than a prohibition of actual copying.' No matter how poor artistically the 'author's' addition, it is enough if it be his own." *Alfred Bell & Co., supra,* 191 F.2d at 102.-03.

—Berrie's contributions to the pre-existing work may well fall on the "merely trivial" side of the line. Where as here the question of originality is a close one, a decision to grant or deny protection made in the first instance by the agency charged with administering the copyright laws would have been highly persuasive evidence of copyright validity. *Cf. Amer. Home Products, supra,* 589 F.2d at 106 & n.2. The presumption of validity attaching to copyright registration is of course a function of judicial deference to the agency's expertise. Here, however, the Copyright Office had no opportunity to pass on plaintiff's claim accurately presented. The knowing failure to advise the Copyright Office of facts which might have occasioned a rejection of the application constitute reason for holding the

registration invalid and thus incapable of supporting an infringement action, 1 Nimmer § 94, or denying enforcement on the ground of unclean hands, *id.* § 149.2; *see Vogue Ring Creations, Inc. v. Hardman,* 410 F.Supp. 609, 614–16 (D.R.I.1976); *see also Hobeau Enterprises, Inc. v. Printsiples Fabric Corp.,* 77 F.R.D. 1, 2 (S.D.N.Y.1977); *Ross Products, Inc. v. N. Y. Merchandise Co.,* 242 F.Supp. 878, 879–80 (S.D.N.Y.1965) and 233 F.Supp. 260, 264 (S.D.N.Y.1964); *Internat'l Biotical Corp. v. Associated Mills, Inc.,* 239 F.Supp. 511 (N.D.Ill.1964); *Wrench v. Universal Pictures,* 104 F.Supp. 374 (S.D.N.Y.1952). *Cf. Advisors Inc. v. Wilsen-Hart, Inc.,* 238 F.2d 706, 708 (6th Cir. 1956) ("innocent misstatement . . in the affidavit and certificate of registration, unaccompanied by fraud . . . does not invalidate the copyright, nor is it thereby rendered incapable of supporting an infringement action"); *Champion Map Corp. v. Twin Printing Co.,* 350 F.Supp. 1332 (E.D.N.C.1971) (merely technical omissions insufficient to deny enforcement); *Freedman v. Milnag Leasing Corp.,* 20 F.Supp. 802 (S.D.N.Y.1937) (test is substantial and good faith compliance).

While questions of a party's intent usually ought not be decided on the basis of affidavits, *Ross, supra,* 242 F.Supp. at 880, the underlying facts in this case are clear; it is only the implications to be drawn from those facts that are disputed. Here, Mr. Berrie concedes both knowledge of the pre-existing work and that it was in the public domain at the time plaintiff's application was filed; a conscious policy on his part not to disclose to the Copyright Office such pre-existing works on which his designs are based; and actions consistent with that policy in respect of the Gonga application. I am compelled to the conclusion that Mr. Berrie intentionally withheld material information from the Copyright Office in the face of a specific and clear direction to disclose it. In these circumstances, I decline to enforce the resulting copyright.[6]

---

6. The issue of the wooden neck plaque feature is instructive. It is clear to me that the public domain gorilla wore such a sign in 1977. Mr.

Berrie first saw that gorilla in 1978. The plaques adorning the Japanese gorilla and Gonga are identical except for their message. In

And even were I to assume the copyright enforceable and Berrie's contributions of sufficient originality, a finding of infringement would of necessity have to turn on defendant's copying of the type of plush used by plaintiff (which is apparently standard to the industry); the lack of ball and chain (an obviously separable feature now also missing on the public domain gorilla); and certain unspecified facial features. Elsner's gorilla does not in fact "copy" the neck plaque and skin tone of Gonga, and I have found that Berrie was not the originator of the eyebrows and brown nose. Under the familiar principle of copyright law discussed earlier, the derivative author receives protection only for his original contributions. Both Professor Nimmer and recent caselaw in this district reject the notion that a derivative work copyright protects against copying the public domain aspects of that work. 1 Nimmer § 41; *Reyher v. Children's Television Workshop*, 387 F.Supp. 869 (S.D.N.Y.1975), *aff'd on other grounds*, 533 F.2d 87 (2d Cir.), *cert. denied*, 429 U.S. 580, 97 S.Ct. 492, 50 L.Ed.2d 588 (1976). Professor Nimmer's view is of particular force here, where plaintiff in no sense functioned as a researcher or compiler of arcane, albeit public domain materials. In my view neither the use of similar plush nor the elimination of the ball and chain are sufficient to support a charge of infringement and I am unable to discern any distinguishable variations in facial dimensions between the public domain work and Berrie's Gonga.

Furthermore, while on the copying aspect of the Gonga claim there is both striking similarity and evidence of access,[7] it is equally plausible that Elsner's supplier Good Choice copied the public domain gorilla rather than Gonga. Good Choice represented as much to Mr. Elsner originally and subsequently confirmed that again in a recent letter to defendant. Thus, I would not draw the inference that copying was from plaintiff's rather than the public domain work.

Finally, there is a serious element of inequity in preventing Elsner from marketing its gorilla when the virtually identical public domain Gori Gori is freely sold.

In sum, even were I inclined to overlook Berrie's erroneous application respecting Gonga, on this state of the record plaintiff's likelihood of success on the Gonga claim is minimal at best, and no countervailing hardship factor is present.

For the reasons stated, plaintiff's motion to enjoin copyright infringement of it Gonga gorilla is denied and defendant's motion for summary judgment on that claim is granted.

## III.

### THE LANHAM ACT CLAIM

This aspect of the litigation does not require extended discussion. Both the facts and the law are clear. The claim is that defendant's use of the name "Congo" in connection with sales of its gorilla infringes plaintiff's common law trademark "Gonga." I hold that it does.

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), creates a federal remedy for unfair competition, embracing claims of common law trademark infringement. *E. g. Beech-Nut, Inc. v. Warner-Lambert Co.*, 480 F.2d 801 (2d Cir. 1973). The "vital issue" in such cases at the preliminary injunction stage is "whether there is a probability of success upon trial" for

---

his affidavits, Mr. Berrie carefully avoids stating that the neck plaque was his creation. Yet Berrie's copyright application clearly carries this implication. One seeking to avoid infringement by consulting that application would have to assume that the neck plaque was protected. In point of fact all but Berrie's particular message is in the public domain. A proper application would have revealed this. By virtue of the omissions in its application, plaintiff has effectively arrogated to itself rights which it does not legitimately possess.

7. It is undisputed that Good Choice, "a third party with whom both the plaintiff and defendant were dealing had possession of plaintiff's work" during the crucial period, a sufficient showing to establish defendant's access. 2 Nimmer § 142.1 (citing *DeAcosta v. Brown*, 146 F.2d 408 (2d Cir. 1944)).

"[t]here is no question that irreparable harm would result from a failure to enjoin if the plaintiff ultimately succeeds on the merits." *Amer. Home Products v. Johnson Chemical Co.*, 589 F.2d 103, 106 (2d Cir. 1978). The crux of the case on the merits turns on "whether there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question," *McGregor-Doniger Inc., v. Drizzle Inc.*, 599 F.2d 1126, 1130, (2d Cir. 1979), that is, whether the competing marks are so similar as to create a likelihood of confusion.

 Plaintiff's mark, a coined word, is inherently strong, a "fanciful" mark deserving of full blown trademark protection. *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9–11 & n.12 (2nd Cir.) No secondary meaning in the mark need be shown. *Amer. Home Products, supra,* 589 F.2d at 107. Berrie possesses common law rights in the mark Gonga, nationwide in scope, by virtue of the sales of its gorilla under that mark.

Defendant's name Congo—similar both verbally and visually to plaintiff's mark—used on an identical and directly competing product sold through the similar channels of trade and directed to the same set of potential purchasers, is confusingly similar to plaintiff's mark.

The only defense raised to the trademark claim is that because Elsner does not affix the mark Congo to its gorilla, no confusion at the retail consumer level is engendered. It is conceded however that Elsner advertises and sells its gorilla to the trade under the name Congo. There is no reason in law or logic why Berrie would not be entitled to forestall confusion at the wholesale level. The test of course is whether one—in this case a retailer—who had seen Berrie's gorilla under the mark Gonga, would later know the difference when presented with an identical gorilla offered to him under the identifying name Congo. *Amer. Home Products, supra,* 589 F.2d at 107. In my view, confusion in such circumstances is likely.

Accordingly, Berrie is entitled to an injunction requiring Elsner to refrain from using the name Congo in connection with the promotion and sale of its stuffed gorilla. On the present record, no security for the issuance of the injunction appears necessary. The parties are directed to settle an appropriate order on five (5) days' notice. In connection therewith, counsel may address the issue of security. They are also to advise the Court whether trial on the merits of the trademark claim is necessary and, if so, the nature of the issues to be raised and the extent of contemplated discovery.

## IV.

## CONCLUSION

1. Plaintiff's motion for a preliminary injunction respecting its three claims of copyright infringement (first, second, and third causes of action) is denied.

2. The Clerk of the Court is directed to enter summary judgment in defendant's favor dismissing plaintiff's first, second and third causes of action.

3. Plaintiff's motion for preliminary injunction on its fourth, fifth and sixth causes of action is granted in accordance with Part III of this opinion.

The parties are to settle an appropriate order on five (5) days' notice. Unless further proceedings are contemplated, a judgment and order of permanent injunction will issue; and the action will be deemed terminated.

It is So Ordered.