KAMAR INTERNATIONAL,
Plaintiff-Appellee,

v.

RUSS BERRIE & COMPANY, INC., et al., Defendant-Appellant.

No. 86–6362.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 4, 1987.

Decided Oct. 1, 1987.

Michael A. Painter, Beverly Hills, Cal., for defendant-appellant.

Joseph A. Yanny, Los Angeles, Cal., for plaintiff-appellee.

Before ALARCON, HALL and O'SCANNLAIN, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

In this copyright infringement case, Russ Berrie & Co., Inc. (Berrie) appeals the district court's award of statutory damages to Kamar International, Inc. (Kamar) under the Copyright Act of 1909, 17 U.S.C. § 101(b) (1976). Berrie contends that the district court used improper standards in determining damages and that the final award is "unjust." We affirm the judgment below.

## I. Background

This is the third time this copyright infringement case has come before this court. An exhaustive history of the case through the second appeal is presented in *Kamar International, Inc. v. Russ Berrie & Company, Inc.*, 752 F.2d 1326, 1328–29 (9th Cir.1984) (hereinafter *Russ Berrie II*). The remainder of this section describes proceedings since 1984.

In its 1984 opinion in *Russ Berrie II*, this court remanded this case to the district court for three purposes: (1) to recalculate Berrie's profits, taking into account all allowable deductions for overhead; (2) to decide whether to increase the potential statutory award to Kamar above the ceiling set forth in 17 U.S.C. § 101(b); and (3) to elect between an award of damages reflecting Berrie's profits and an award of statutory damages. 752 F.2d at 1333.

On remand, the district court awarded Kamar statutory damages in excess of the ceiling, in the amount of $460,520. The court did not recalculate the profits in light of allowable deductions for overhead, since: (1) it decided to award statutory damages; (2) the determination of profits would be difficult; and (3) "Berrie is having difficulty proving its pertinent overhead." The district court determined that the statutory maximum could be exceeded for the purpose of deterring post-notice infringement, since 42,502 infringing sales occurred after notice. The district court subsequently denied Berrie's motion for a new trial.

Berrie now appeals on a number of grounds, arguing that the district court improperly calculated the number of infringing items and that the amount of damages is "unjust." It also challenges the district court's denial of its motion for a new trial. Kamar contends that Berrie's appeal is frivolous and that sanctions should be imposed on Berrie.

## II. Determination of the Number of Infringing Sales

The district court determined that Berrie made 42,502 infringing sales after notice. The court arrived at this number by subtracting 3,500, the number of items sold by Berrie prior to notice of infringement, from 46,002, the total number of infringing items sold. Berrie contends that 42,502 is incorrect. Although Berrie agrees that 46,002 represents the total number of infringing sales, it contends that the district court applied the improper date of notice of the infringement claim and that the court incorrectly determined the number of sales prior to notice. We review the district court's findings regarding the existence of notice and the timing of infringing sales for clear error. *Russ Berrie II*, 752 F.2d at 1329. However, we must determine de novo whether a particular notice satisfies the writing requirement of 17 U.S.C. § 101(b). *Id.*

### A. Date of Notice

The district court determined that Berrie had actual notice of Kamar's infringement

claim after Berrie was served with Kamar's complaint. Although the district court did not specify the exact date of service, the docket sheet indicates that service was made between August 10, 1977 (date of order for service) and August 18, 1977 (date of filing of Berrie's opposition to Kamar's motion for a preliminary injunction). Berrie contends that the proper date of notice of the infringement claim under § 101(b) is much later—November 7, 1977, the date of the entry of the preliminary injunction. Berrie argues that before this time, it was unable to determine which of its merchandise were infringing items, since it was provided "only with small, unreadable photocopies of negatives of the infringing items."

 Berrie's contention that it did not have notice for the purposes of section 101(b) until November of 1977 is meritless. First, the clear language of the statute defines actual notice to a defendant to be "either by *service of process* in a suit or other written notice served upon him." 17 U.S.C. § 101(b) (emphasis added). Second, this court, in *Russ Berrie II*, has previously determined that the date of service of Kamar's complaint was the date of actual notice. 752 F.2d at 1329–30. Kamar's complaint also satisfied the writing requirement of section 101(b). *See id.* (implying writing requirement met); *Pye v. Mitchell*, 574 F.2d 476, 482–83 (9th Cir.1978) ("written notice" of infringement present even though there was no mention of copyright).

B. *Calculation of the Number of Infringing Items Sold*

 In its 1983 memorandum decision, the district court found that 500 copies of each of the seven copyrighted works were sold or possessed by Berrie before notice. In its 1986 order now before us, the district court apparently multiplied 500 by seven, the number of copyrighted works, to compute 3,500 as the number of infringing sales *before* notice. This number, in turn, was subtracted from the uncontested number of total infringing items sold, 46,002, to arrive at the number of infringing sales

*after* notice—42,502. Berrie alleges that this initial finding of exactly 500 copies per copyrighted work is clearly erroneous, claiming that there is no evidence in the record supporting this finding and that there should have been an evidentiary hearing to determine the number of infringing sales before notice.

Berrie first claims that the issue resolved by the earlier finding, whether there were enough infringing sales to support an award of maximum statutory damages, is irrelevant to the present question of the precise number of sales. Berrie claims that the number of infringing sales before notice has never been at issue, arguing that the 1983 finding related to sales before the judgment for Berrie in 1979. This is misguided, particularly since the district court's 1983 finding expressly determined the number of sales after notice, i.e., after "this suit was served on defendant." The contexts of the 1983 and 1986 findings are indeed similar, since both findings address the question of the number of sales before and after notice.

Second, Berrie claims that the district court improperly interpreted its earlier 1983 finding that "over 500 copies" were sold or possessed before notice to mean *exactly* 500. In light of the evidence before the district judge, the finding of 500 sales per work before notice was not clearly erroneous. In fact, it appears to be a finding in Berrie's favor. As Kamar explained, there is evidence [1] showing that *all* of Berrie's sales were sales after notice. The district court's findings that there were a total of 3,500 sales before notice and 42,502 sales after notice are based upon information supplied by Kamar and "not rebutted" by Berrie. The district court noted that Berrie's evidence regarding total sales and inventory was inaccurate, and that Berrie failed to account for discrepancies between items ordered and items sold. Kamar claims that Berrie refused to supply information in response to Kamar's specific discovery request for the number of sales of items before notice, only providing information regarding the

---

1. This evidence is based upon the dates provided by co-appellant Russ Berrie & Co., and upon other depositions and exhibits.

number of items ordered from the manufacturers. Berrie had an adequate opportunity to show its sales before notice, but failed to do so.

Because we uphold the district court's calculation of infringing sales, its denial of Berrie's motion for a new trial was not an abuse of discretion. *See Robins v. Harum*, 773 F.2d 1004, 1006 (9th Cir.1985) (standard of review). We reject Berrie's argument that there is insufficient evidence to support the calculation, since any lack of evidence, if it exists, is attributable to Berrie's own omissions during discovery.

### III. *Propriety of the Damages Award*

Berrie argues that the district court's award of $460,520 in statutory damages was not "just." Berrie supports this position by pointing to three facts: (1) Kamar stipulated that it suffered no actual damages; (2) there was no "willful" infringement; and (3) the award was about 400% of the gross profits and an even greater percentage of actual profits (after deductions for overhead).

■ The district court's decision to award statutory damages is within its "broad discretion." *Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 231, 73 S.Ct. 222, 224, 97 L.Ed. 276 (1952); *see Russell v. Price*, 612 F.2d 1123, 1131–32 (9th Cir.1979), *cert. denied*, 446 U.S. 952, 100 S.Ct. 2919, 64 L.Ed.2d 809 (1980). We review the district court's decision to exceed the statutory maximum where there are sales after notice for an abuse of discretion. *Russ Berrie II*, 752 F.2d at 1330–31.

Under section 101(b), "the limitation as to the amount of recovery [does not] apply to infringements occurring after the actual notice ... by service of process." 17 U.S.C. § 101(b). "Once actual notice releases the court from the strictures of the statutory limitations," the district court is bound only to award "such damages as ...

shall appear to be just." *Pye*, 574 F.2d at 482.

■ First, Berrie's contention that the award is unjust in light of Kamar's stipulation that it suffered no actual damages is deceptive. Kamar did not stipulate to any such thing; instead, Kamar stipulated that "its lost profits are not to be considered as damages," and it withdrew its claim for actual damages.

■ Second, Berrie's argument that the damages amount is unjust because the infringement was found to be "not willful," *Russ Berrie II*, 752 F.2d at 1331, is not conclusive evidence of the award being too high. The district court may exceed the statutory maximum, even when there is no malicious or "willful" intent to infringe, in order to discourage wrongful conduct. *See Woolworth*, 344 U.S. at 233, 73 S.Ct. at 225.

■ Finally, we must determine whether the amount of damages, set at approximately four times the amount of gross profits, and in excess of the statutory maximum, is so great as to be "unjust."[2] This circuit has provided some guidance for determining whether an award is just. When either profits or actual damages are ascertained and a court decides to award statutory damages, the statutory damages must be "in *excess* of the amount that would have been awarded as profits or actual damages." *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 520 (9th Cir.1985) (emphasis added). The award here meets this test. Furthermore, "statutory 'in lieu' damages [should] effectuate the statutory purposes." *Id.* The statutory purposes of the Copyright Act of 1909 are "to provide adequate compensation to the copyright holder and to discourage wrongful conduct and deter infringements." *Id.* In this case, the district court explained that the award was specifically designed to "deter such post-notice infringement."

---

2. The parties agree that Berrie's gross profits before deducting overhead costs are $118,-131.90. *Russ Berrie II*, 612 F.2d at 1331. The district court arrived at the award of $460,520 by adding:

(1) $35,000, representing statutory damages of $5,000 for each of the seven infringed copyrights;
(2) $425,020, representing $10 for each of the 42,002 infringing items sold; and
(3) $500, representing $250 for each of the two remaining infringed copyrights.

Case law does not provide significant guidance for determining when an award which, as here, exceeds the statutory maximum is unjust.[3] In *Turner & Dahnken v. Crowley*, 252 F. 749 (9th Cir. 1918), this court struck down an award in excess of the statutory maximum. The court reasoned that the trial court's award of $7,000, based upon the yardstick measure, bore no relation to what reasonably might have been the plaintiff's actual damages. However, this test for a just reward is no longer dispositive in light of the Supreme Court's decision in *Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 73 S.Ct. 222, 97 L.Ed. 276 (1952). In *Woolworth*, the Court explained that one purpose of an award based upon the statutory yardstick is the discouragement of future infringements, and, therefore, the award need not reflect actual damages. 344 U.S. at 233, 73 S.Ct. at 225. *See also* 4 M. Nimmer, *Nimmer on Copyright*, appendix 17–3 (1986) (questioning validity of *Turner*).

There is an argument to be made that the yardstick amount was set as a reasonable upper limit for awards based upon each infringing copy.[4] *See* M. Nimmer app. 17–2—3 & n. 7. In *Davis v. E.I. DuPont de Nemours & Co.*, 249 F.Supp. 329 (S.D.N.Y.1966), the district court granted an award which exceeded the maximum and the $50 per performance yardstick. The court stated that "[t]he yardstick amounts at least ... provide something definite to turn to." *Id.* at 347.

We therefore uphold the award since the district court adhered to the statutory yard-stick. We cannot say that the district court abused its discretion in awarding this amount of damages, since the award was made to discourage future infringement.

## IV. *Conclusion*

We affirm the award of the district court. Kamar requests that we impose sanctions upon Berrie under Fed.R.App.P. 38. Under Rule 38, we may impose sanctions upon Berrie if its appeal is "utterly without merit." *Ryan v. Bilby*, 764 F.2d 1325, 1328–29 (9th Cir.1985) Berrie's appeal is not so frivolous that sanctions are warranted.

AFFIRMED.

---

**3.** It is important to note that an award of over five times the gross profit of the infringer was upheld by the Supreme Court in *Woolworth*. 344 U.S. 228, 230–31, 73 S.Ct. 222, 224, 97 L.Ed. 276. This case is not dispositive, however, since the total award in *Woolworth* was equal to the statutory maximum. *See id.*

**4.** Berrie argues that the $10 yardstick amount applied by the district court in determining statutory damages is not applicable to toy stuffed animals. At oral argument, Kamar explained that Berrie had stipulated to the $10 amount in the pretrial conference memorandum. Berrie admitted that the pretrial order set the yardstick at $10. Therefore, it appears that Berrie aban-

doned this contention at an early stage in the proceedings. The $10 yardstick is indeed the correct yardstick for stuffed animals. *See* 17 U.S.C. § 101(b) ($10 yardstick applies to every infringing copy of "a painting, statue or sculpture"); *Mazer v. Stein*, 347 U.S. 201, 74 S.Ct. 460, 98 L.Ed. 630 (1954) (mass-produced statues copyrightable as "sculpture"); *Gay Toys, Inc. v. Buddy L Corp.*, 703 F.2d 970, 973 (6th Cir.1983) (toys are copyrightable); *see also Russ Berrie & Co. v. Jerry Elsner Co.*, 482 F.Supp. 980, 985 (S.D.N.Y.1980) (where Berrie agreed that "plush toys ... are copyrightable as sculptural works of art.").