# United States Court of Appeals
## For the First Circuit

Nos. 06-2058, 06-2059

FERNANDO TORRES-NEGRÓN,

Plaintiff, Appellant/Cross-Appellee,

v.

J & N RECORDS, LLC,

Defendant, Appellee/Cross-Appellant,

ANTONIO RIVERA, et al.,

Defendants.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Héctor M. Laffitte, U.S. District Judge]

Before

Torruella and Lipez, Circuit Judges,
and Stafford,* Senior District Judge.

Carlos G. Dalmau-Ramírez, with whom Carlos Dalmau Law Offices, Tamara Sosa Pascual, and Pascual Moran & Associates were on brief, for appellant/cross-appellee.
James B. Sheinbaum, with whom Borstein & Sheinbaum was on brief, for appellee/cross-appellant.

October 2, 2007

* Of the Northern District of Florida, sitting by designation.

**LIPEZ**, <u>Circuit Judge</u>.  At the request of a friend who was looking for new material for his band to play, Fernando Torres-Negrón wrote the music and lyrics to a song, *Noche de Fiesta*, in 1993.  Torres gave his friend the piece of paper on which he had written the lyrics, along with a cassette tape containing a recording of Torres singing the song.  The song eventually ended up on three CDs, distributed both in Puerto Rico and the continental United States.  When Torres first learned of the distribution and sales of his song in 2001, he submitted an application for copyright registration with the Copyright Office, and filed this lawsuit for infringement.  Although the case proceeded to trial and resulted in a jury verdict for Torres, the district court granted the defendants' motion for judgment as a matter of law.

There is no dispute about the district court's finding that Torres submitted a reconstruction of his original songs, created from his memory and without direct reference to his original works, to the Copyright Office.  Because the Copyright Act requires that a "copy" be submitted along with an application for copyright registration, and not a reconstruction, Torres failed to submit a complete application for registration of his copyright.  A complete application is a jurisdictional prerequisite to filing suit in federal court for copyright infringement.[1]  Therefore, we

---

[1] The Copyright Act was amended in 2005, after this action was filed, to add "preregistration" as another method for obtaining eligibility to file an infringement action.  <u>See</u> 17 U.S.C. §

agree with the district court that it lacked jurisdiction over Torres' lawsuit.  We also conclude that the district court did not err in denying defendants' motion for attorney's fees.

**I.**

**A. Factual Background**

In 1993, Torres was a songwriter living in a rural town in Puerto Rico when his friend, Rubén Cañuelas, asked him to write some songs for Cañuelas' band, Tempo Merenguero.  The band was primarily a cover band that played merengue music.  To give Torres a sense of the band's musical style, Cañuelas invited Torres over to his house and played a cassette tape for him that included songs that the band frequently played.  After listening to the tape, Torres wrote the song *Noche de Fiesta*, using a merengue bomba rhythm, which was similar to the rhythm of some of the songs on the tape.  Torres then gave the lyrics, written on a piece of paper, to Cañuelas, along with another cassette, on which he had recorded himself singing the song.  Torres understood that the song would be played in public by Tempo Merenguero.  Torres did not, at that time, make a copy of the lyrics or the cassette for himself and never saw the originals again.

Cañuelas subsequently joined a different band, Gozadera, and recorded *Noche de Fiesta* with that band.  The resulting CD,

411(a); La Resolana Architects, PA v. Clay Realtors Angel Fire, 416 F.3d 1195, 1200, 1206-07 (10th Cir. 2005).  As the preregistration option is not at issue here, we do not further discuss it.

titled *Bailando y Gozando con Gozadera*, was produced by Antonio Rivera and released in 1993.  Torres had been informed that his song would be recorded by Gozadera and that their album would be commercially released.  Torres purchased a copy of the record and registered his song with the American Society of Composers, Authors and Publishers ("ASCAP").  He also spoke with Rivera about the recording and was paid nine hundred dollars in royalties, as compensation for the use of two of his songs on that record.[2]

Around the same time, Rivera sold the master recording of *Noche de Fiesta* to J & N Records Distributor, Inc. ("J & N").  Over the course of the next six years, the song (as recorded by Gozadera) was released on three additional CDs: a second version of *Bailando y Gozando con Gozadera* was distributed by J & N in 1994; a compilation record called *Merenhits '94* was released by J & N and EMI later that year, containing *Noche de Fiesta*; *Merenhits '94* was re-released in 1999.  Neither J & N nor the other distributors of these records contacted Torres to ask his permission for use of his song on these subsequent records, and he was not paid royalties or other compensation for that use.  Torres' name did appear as the author or composer of the song on the first three records; his name was deleted from the credits on the 1999 version of *Merenhits '94*.

---

[2] The record contained another song written by Torres, *Bebo por Ti*, which was also litigated at trial.  However, *Bebo por Ti* is not at issue in this appeal.

-4-

Torres learned of the existence of these three records in 2001. At that point, he began taking steps to protect his rights to *Noche de Fiesta*. He submitted an application for registration of copyright to the Copyright Office, and received a certificate of copyright on January 31, 2002. Because the application required a "copy" of the copyrighted work, Torres submitted a typed version of the lyrics and a cassette tape, on which he had recorded himself singing the song and clapping the rhythm. He created the tape in 2001, at the time he prepared his application. It is unclear exactly when Torres first wrote a second set of the lyrics to *Noche de Fiesta*, after giving Cañuelas his original version in 1993, but it was certainly after he learned of the 1993 Gozadera record.

## B. Procedural Background

Torres filed a copyright infringement action against numerous defendants, including J & N and other producers and distributors of each of the three records, in the District of Puerto Rico. At trial, the defendants moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a)(1) after the close of the plaintiff's case. The district court dismissed the claims against some defendants, but denied the motion as to J & N Records. At the close of all evidence, the remaining defendants renewed their motion, but the court reserved judgment and permitted the case to go to the jury. The jury returned a

verdict in favor of Torres, finding that J & N had infringed his copyright on *Noche de Fiesta*.

Defendant J & N then filed a renewed motion for judgment as a matter of law, Fed. R. Civ. P. 50(b), on a number of grounds. J & N argued that the district court lacked subject matter jurisdiction for two independent reasons: (1) the copy of *Noche de Fiesta* submitted to the Copyright Office was an invalid reconstruction (rather than a "bona fide" copy); and (2) Torres' application indicated that his song was not a derivative work, whereas J & N argued that it was an unauthorized derivative of an earlier merengue song. J & N also argued that the case was barred by the statute of limitations, that there was insufficient evidence to support the jury's verdict, and that the damages were speculative and unjustified.

The district court held that "a copy that is simply created or reconstructed from memory without directly referring to the original, known as [a] 'reconstruction,' does not comply with the deposit requirements of the Copyright Act," and found that "Torres' deposits constitute impermissible reconstructions." Torres Negron v. Rivera, 433 F. Supp. 2d 204, 213-14 (D.P.R. 2006). Therefore, the court concluded that the copyright registration was invalid, and because "copyright registration is a jurisdictional prerequisite for maintaining a copyright infringement suit," it granted J & N's motion for judgment as a matter of law.

The court alternatively found that the jury verdict could not stand because "(1) *Noche de Fiesta* is an unauthorized derivative work not entitled to copyright protection; (2) Torres granted [the producer] an implied license to exploit the song[] *Noche de Fiesta . . .*; and (3) the amount of damages awarded by the jury is untenable due to insufficiency of the evidence."

Torres appealed, seeking reinstatement of the jury verdict. J & N cross-appealed, challenging the district court's denial of its motion for attorney's fees and costs. We affirm the district court's judgment dismissing the infringement claims, on the basis of Torres' failure to satisfy the deposit copy requirement for copyright registration. We also affirm the district court's denial of attorney's fees.

**II.**

We review the district court's dismissal of a case for lack of subject matter jurisdiction de novo. Gill v. United States, 471 F.3d 204, 205 (1st Cir. 2006). We review the court's findings of fact for clear error. Id.

"[N]o action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." 17 U.S.C. § 411(a); see also Data Gen. Corp. v. Grumman Sys. Support Corp., 36 F.3d 1147, 1160 (1st Cir. 1994) ("[R]egistration of the copyright is a prerequisite to suit under

-7-

the Copyright Act." (citation omitted)). This requirement is often described as a jurisdictional one. See, e.g., Positive Black Talk Inc. v. Cash Money Records, Inc., 394 F.3d 357, 365 (5th Cir. 2004) ("17 U.S.C. § 411(a) sets forth [a] jurisdictional prerequisite . . . ."); Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp., 354 F.3d 112, 115 (2d Cir. 2003) ("Th[e] registration requirement is jurisdictional."); Xoom, Inc. v. Imageline, Inc., 323 F.3d 279, 283 (4th Cir. 2003) ("Copyright registration is a jurisdictional prerequisite to bringing an action for infringement under the Copyright Act."); M.G.B. Homes, Inc. v. Ameron Homes, Inc., 903 F.2d 1486, 1488 (11th Cir. 1990) ("The registration requirement is a jurisdictional prerequisite to an infringement suit."). In order to complete the registration process, and receive a certificate of copyright registration, a creator must submit to the Copyright Office "a complete copy or phonorecord" of the work for which he seeks registration, often referred to as the "deposit copy." 17 U.S.C. § 408 (b).[3] The Copyright Act defines "copies" as "material objects, other than phonorecords, in which a work is fixed by any method now known or later developed, and from which the work can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." Id. § 101.

---

[3] If the work for which the creator seeks protection is unpublished, he must submit one complete copy to the Copyright Office. If the work is published, he must submit two complete copies. 17 U.S.C. § 408(b)(1), (2).

It is undisputed that the written lyrics and tape that Torres submitted as his deposit copy were not the originals — that is, they were not the exact tape or piece of paper on which he first recorded the music or wrote the lyrics of the song. Indeed, the parties agree that Torres gave both the original lyrics and the first recording of the song to Cañuelas. By the time he submitted his copyright registration application, he no longer had access to either the original writing of the lyrics or the tape recording of the song. Thus, in order to comply with the requirement that a "copy" of the song be submitted with the application, Torres reconstructed his original work from memory by singing the song, while clapping the rhythm, into a tape recorder. It was the reconstruction, made in 2001, that he submitted to the Copyright Office.

## A. The Deposit Copy Requirement

The question before us is whether that reconstruction is a "copy" within the meaning of 17 U.S.C. § 408(b). The statutory definition of "copy" provides little guidance. It neither distinguishes between copies and reconstructions, nor specifies whether a copy must be made from an original. However, dictionary definitions highlight the difference between a "copy" and a "reconstruction." Black's Law Dictionary defines a "copy" as an "imitation or reproduction of an original." Black's Law Dictionary 360 (8th ed. 2004). To "reconstruct" something is "to construct

-9-

again; rebuild; make over," or to "re-create in the mind from given or available information."  Random House Webster's Unabridged Dictionary 1612 (2d ed. 1997).  Given these definitions, a reconstruction is not a copy; a reconstruction is created without an original, whereas a copy is made from an original.  Congress specified that a registration had to be accompanied by a "copy."  See Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.").  Therefore, we agree with the district court that a reconstruction, created without access to or reliance on the original work, cannot constitute a "copy," as that term is used in 17 U.S.C. § 408.

The only other circuit courts that have addressed this question have arrived at the same conclusion.  In Kodadek v. MTV Networks, Inc., 152 F.3d 1209, 1212 (9th Cir. 1998), the Ninth Circuit held that a "bona fide copy" is one that is "virtually identical to the original and . . . produced by directly referring to the original."  Thus, reconstructions created from memory, without access to the original work, could not serve as valid copies for registration purposes.  Id.[4]

_____

[4] The Kodadek decision relied heavily on a prior Ninth Circuit decision.  In Seiler v. Lucasfile, Ltd., 808 F.2d 1316, 1322 (9th Cir. 1986), the court held that a copyright registration was invalid unless accompanied by a "bona fide copy" of the work, and that a reconstruction from memory could not qualify as a bona fide

-10-

The Sixth Circuit adopted the same rule in Coles v. Wonder, 283 F.3d 798, 802 (6th Cir. 2002). There, the plaintiff claimed that he had written the song "For Your Love" in 1982 and sued Stevie Wonder, alleging copyright infringement, after Wonder recorded and distributed a song of the same name in 1995. The plaintiff registered his song in 1990 and submitted a recording of the song, as his deposit copy, that had been recorded earlier that same year. He claimed that he no longer possessed an original (i.e., 1982) recording of the song. Wonder argued that the plaintiff's registration was invalid because the deposit copy was not a bona fide copy, but rather a recreation from memory. The Sixth Circuit agreed, following the reasoning of Kodadek, and concluded that the deposit copy would be valid only if it had been created from an original recording of the song. Id. at 802 ("[H]ad [the plaintiff] been able to establish that he made the 1990 recording after listening to an audio copy of his 1982 rendition of For Your Love, he could have met the deposit requirement and his copyright would be valid from the date listed on his application. Likewise, had he made his 1990 recording after reviewing a tear sheet or other written summary that dated from 1982, he could have satisfied the deposit requirement."). The court also explained that a strict application of the word "copy" would serve to protect the rights of artists by encouraging prompt registration and

copy.

-11-

preventing fraudulent claims filed after the commercial success of a work.  Id.

Torres argues that Kodadek and Coles are distinguishable because each of those cases involved a dispute about who first authored the work and, therefore, who was the valid owner of the copyright.  He further argues that the definition of "copy" adopted in those cases should, at most, be limited to cases involving disputes about authorship.  Torres has cited no support for this argument.  That is not surprising.  It makes no sense to interpret the statutory requirement of a deposit copy differently depending on what factual issues are disputed in a given case.  There is no valid reason, in our view, to assume that the legislature intended the word "copy" to be a chameleon, taking on different meanings depending on the context of the litigation.

## B. The Immaterial Mistakes Rule

Torres resists the logic of Kodadek and Coles on another ground, arguing that the statutory requirement of a deposit "copy" should be construed with considerable flexibility, as other components of the registration process are.  See Data Gen. Corp., 36 F.3d at 1161 ("It is well established that immaterial, inadvertent errors in an application for copyright registration do not jeopardize the validity of the registration.");  see also Billy-Bob Teeth, Inc. v. Novelty, Inc., 329 F.3d 586, 591 (7th Cir. 2003).  We have defined "immaterial" errors as those that are "not

likely to have led the Copyright Office to refuse the application."
Data Gen. Corp., 36 F.3d at 1161. Mistakes such as an incorrect
date of creation or failure to list all co-authors easily qualify
as immaterial because the Copyright Office's decision to issue a
certificate would not be affected by them. See id. at 1163
(stating that inadvertent failures to list preexisting works or
coauthors are encompassed by the rule excusing immaterial
mistakes). However, submission of something other than a "copy" to
satisfy the deposit copy requirement cannot be classified as an
"immaterial" mistake because the failure to submit a valid copy
would affect the Copyright Office's issuance of a certificate. Cf.
Syntek Semiconductor Co. v. Microchip Tech. Inc., 307 F.3d 775, 781
(9th Cir. 2002) ("The applicable regulations provide that the
Copyright Office will 'cancel a completed registration' if the
'deposit material does not meet the requirements of the law and
Copyright Office regulations, and the Office is unable to get the
defect corrected.'" (quoting 37 C.F.R. § 201.7(b))); 2-7 M. Nimmer
& D. Nimmer, Nimmer on Copyright § 7.20[B] ("If the claimant
wilfully misstates or fails to state a fact that, if known, might
have caused the Copyright Office to reject the application, then
the registration may be ruled invalid." (footnote omitted)); id. §
7.17[2][b] ("It has been held on occasion that the deposit failed
to satisfy the registration requirements. The result in those

-13-

circumstances is to disallow the registering party from filing suit for infringement.").

Torres cites Three Boys Music Corp. v. Bolton, 212 F.3d 477 (9th Cir. 2000), in support of his argument that "mistakes" in the deposit copy (as opposed to the registration application) should be treated as inconsequential.  Claiming that the plaintiff's copyright registration was invalid for incompleteness, the defendant in that case said that the deposit copy included sheet music that differed from the recorded version and different "musical elements" than the recorded version (that is, the version that the plaintiff claimed had been infringed).  Id. at 486.  The court rejected this claim, finding that the "definition of a 'complete copy' is broad and deferential."  Id.

Three Boys does not bolster Torres' claim.  First, it was decided by the Ninth Circuit, the same court that decided Kodadek. Given that Kodadek arose from facts largely similar to the facts here, and addressed the same issue, it is more relevant to our decision than Three Boys.  The Three Boys court did not cite to Kodadek, suggesting that it viewed the incompleteness at issue in Three Boys as falling under the rule excusing immaterial mistakes rather than the independent rule that failure to comply with statutorily mandated application procedures will invalidate the registration.

Importantly, there was no dispute in Three Boys that the deposit copy was a "bona fide" or valid copy of the song. Instead, the dispute was over minor discrepancies between the deposit copy and the particular version of the song on which the infringement allegations were based. Here, the deposit copy was not produced directly from the original work, as Torres testified that he no long had possession of, or access to, the original work when he created the deposit copy. The Ninth Circuit's willingness to tolerate minor discrepancies in the deposit copy, like minor errors in the registration application, does not challenge the distinction we have drawn between a copy and a reconstruction. A failure to include a valid copy with a registration application, as required by the statute, is necessarily a material omission and cannot be evaluated under the "inadvertent and immaterial mistakes" rule articulated in Data General Corp., 36 F.3d at 1161.

## C. Deposit Copy As a Jurisdictional Requirement

Torres argues, alternatively, that even if his "reconstruction" does not satisfy the deposit copy requirement, that defect is not jurisdictional.[5] He cites to Shady Records, Inc. v. Source Enters., Inc., No. 03 Civ. 9944 (GEL), 2005 WL

---

[5] Subject matter jurisdiction means that the court has the power to hear and adjudicate the case. See United States v. Cotton, 535 U.S. 625, 630 (2002) ("[S]ubject matter jurisdiction . . . involves a court's power to hear a case . . . ."); Prou v. United States, 199 F.3d 37, 45 (1st Cir. 1999) ("The requirement of subject matter jurisdiction relates directly to the constitutional power of a federal court to entertain a cause of action.").

14920, at *8 (S.D.N.Y. Jan. 3, 2005), for the proposition that a defective application for copyright registration affects only the presumption of validity[6] and not the court's subject matter jurisdiction over the case. In that case, the defendants challenged the validity of the plaintiff's registration because the deposit copies contained only portions of the original sound recording and the application contained an inaccurate list of co-authors. (One song, as originally recorded, was four minutes and forty-six seconds long, while only four minutes and thirty-five seconds were included in the deposit copy. The second song was over thirteen minutes long, but the deposit copy consisted of only thirty-six seconds.) The district court found that the copyright registration, and resulting presumption of validity, attached only to the portions that were submitted along with the registration, but that the decision to register less than the complete work did not render the registration (of those portions) invalid. Id. at *13. The defendants also argued that the defects in the application (such as failure to name all of the co-authors of the song) eliminated the court's subject matter jurisdiction.

---

[6] A plaintiff alleging copyright infringement who obtained a certificate of copyright registration within five years of the first publication of the work has the benefit of a presumption (although a rebuttable one) of the validity of the copyright. 17 U.S.C. § 410(c). If a plaintiff received a certificate of registration more than five years after the work was initially published, the trial court has the discretion to determine the evidentiary weight of the certificate. Id.

The court rejected that claim, explaining that "certificates of copyright registration create a rebuttable presumption of validity, and any such rebuttal is routinely adjudicated by the factfinder as potentially negating the first element of a copyright infringement suit, not as a jurisdictional issue to be decided by the Court." Id. at *8 n.7 (internal citations omitted). The court reasoned that because even a rejected application for registration may be sufficient to create federal jurisdiction, a defect in an application could not strip the court's jurisdiction. Id. at *8.

While it is true that an author whose application for copyright registration has been rejected may still enforce his rights in federal court, he may do so only if he has actually submitted an application and a deposit copy. See 17 U.S.C. § 411(a) ("In any case, however, where the deposit, application, and fee required for registration have been delivered to the Copyright Office in proper form and registration has been refused, the applicant is entitled to institute an action for infringement . . . ."). Thus, federal jurisdiction in the face of a rejected application is contingent upon a complete application.[7] The

---

[7] The Shady Records court also acknowledged and endorsed the rule articulated in Kodadek and Coles, stating that the deposit copies submitted in that case were valid because they had been created directly from either an original or a bona fide copy but recognizing that "[w]hat is not permissible is reconstruction of works without any reference at all to the original version, i.e., reconstruction from memory." 2005 WL 14920, at *14 (citing Coles,

reasoning of the <u>Shady Records</u> court is inapplicable to a situation where the particular defect in a registration application is the failure to submit a <u>complete</u> application. Furthermore, there is no dispute that an immaterial defect in an application (such as the failure to list all co-authors) does not render the registration invalid, and thus does not affect jurisdiction. All of the defects at issue in <u>Shady Records</u> fell within this rule, as they were not the sort of mistakes or omissions that would be "material" to the Copyright Office's issuance of the registration certificate. Therefore, the <u>Shady Records</u> decision is unhelpful to Torres.

The predominant rule is that an invalid registration (involving material errors, fraud, or an incomplete application) nullifies the federal court's subject matter jurisdiction. Both the <u>Coles</u> and <u>Kodadek</u> courts dismissed the plaintiffs' claims after determining that their copyright registrations were invalid, without any discussion of their merits, because they deemed the copyright claims "foreclosed." <u>See</u> <u>Coles</u>, 283 F.3d at 802; <u>Kodadek</u>, 152 F.3d at 1212. In light of the statutory requirement that "no action for infringement . . . shall be instituted until . . . registration of the copyright claim has been made in accordance with this title," 17 U.S.C. § 411(a), the decision that those copyright claims were "foreclosed" amounts to a finding of no

---

283 F.3d at 802; <u>Kodadek</u>, 152 F.3d at 1212; <u>Seiler</u>, 808 F.2d at 132-22).

subject matter jurisdiction. If, as the Shady Records court suggested, an invalid registration simply meant that the merits of the infringement (or ownership) claim would be evaluated without the presumption of validity, each of those courts would have been required to address the merits. That they did not demonstrates that they treated the registration validity question as jurisdictional.

Additionally, in cases where a plaintiff's copyright registration has been invalidated because of a finding of fraud or intentional misrepresentation on the registration application, numerous district courts and the Second Circuit have concluded that the plaintiff's copyright is simply "unenforceable" and have dismissed the claims without discussion of the merits — again indicating that a valid registration is necessary for federal jurisdiction. See Whimsicality, Inc. v. Rubie's Costume Co., 891 F.2d 452, 456 (2d Cir. 1989) ("It is the law of this Circuit that the 'knowing failure to advise the Copyright Office of facts which might have occasioned a rejection of the application constitute[s] reason for holding the registration invalid and thus incapable of supporting an infringement action.' Faced as we are with that exact situation in the instant case, we hold that [the plaintiff], because of its misrepresentations, does not have valid copyrights capable of enforcement." (internal citations omitted) (quoting Eckes v. Card Prices Update, 736 F.2d 859, 861-62 (2d Cir. 1984)));

-19-

GB Mktg. USA Inc. v. Gerolsteiner Brunnen GmbH & Co., 782 F. Supp. 763, 776 (W.D.N.Y. 1991); Russ Berrie & Co. v. Jerry Elsner Co., 482 F. Supp. 980, 988 (D.C.N.Y. 1980); Vogue Ring Creations, Inc. v. Hardman, 410 F. Supp. 609, 616 (D.R.I. 1976). The Third Circuit has also endorsed this rule, albeit in dicta. See Masquerade Novelty, Inc. v. Unique Indus., Inc., 912 F.2d 663, 667 (3d Cir. 1990) ("It has been consistently held that a plaintiff's knowing failure to advise the Copyright Office of facts which might have led to the rejection of a registration application constitutes grounds for holding the registration invalid and incapable of supporting an infringement action." (citing Whimsicality, 891 F.2d at 456; Eckes, 736 F.2d at 861-62)). Although these cases involved copyright registrations invalidated by fraudulent applications, rather than invalid deposit copies, their rationale applies equally here.

The Second Circuit decision, Whimsicality, 891 F.2d at 456, quoted and relied on the reasoning of Russ Berrie, 482 F. Supp. at 988, in which the court explained that the registration could not take legal effect (meaning it could not confer jurisdiction on a federal court or give rise to the presumption of a valid copyright) where the "Copyright Office had no opportunity to pass on plaintiff's claim accurately presented." In other words, where the registration was approved because the Copyright Office believed that it had accurate information, but the

-20-

information contained in the application was, in reality, untrue, the plaintiff was put in a position legally equivalent to someone who had never submitted a complete application for copyright registration.

The Fifth Circuit adopted the same approach in a case where the plaintiff submitted an incomplete deposit copy of the software it sought to protect through a copyright infringement action. Geoscan, Inc. v. Geotrace Techs., Inc., 226 F.3d 387, 393 (5th Cir. 2000). There, the court concluded that where a copyright registration application did not include a complete and bona fide copy of the original work, the plaintiff "had not fulfilled all the statutory formalities necessary to register its copyright and have 'ownership' in its software for purposes of a copyright infringement claim." Id. It therefore affirmed the district court's entry of summary judgment for the defendant.

One purpose of the registration requirement is to allow the Copyright Office to make an initial judgment about the validity of copyrights, based on its experience and expertise, and to reduce the burdens of litigation by giving that judgment some weight in subsequent litigation. See Russ Berrie, 482 F. Supp. at 988 ("Where . . . the question of originality is a close one, a decision to grant or deny protection made in the first instance by the agency charged with administering the copyright laws would have been highly persuasive evidence of copyright validity. The

-21-

presumption of validity attaching to copyright registration is of course a function of judicial deference to the agency's expertise." (citation omitted)); see also Data Gen. Corp., 36 F.3d at 1161-62 ("A second apparent aim of Section 408(b) is to furnish the Copyright Office with an opportunity to assess the copyrightability of the applicant's work. . . . [I]t appears that Congress viewed the deposit requirement as a means of collecting information that the Copyright Office may use in resolving the question of copyrightability for the purposes of Section 410."). That purpose would be undermined if a fraudulent or invalid application could provide a plaintiff entree to the federal courts and, once the defect was discovered, the litigation was allowed to continue without the benefit of the Copyright Office's expertise and consideration.

In light of the plain statutory language and the purpose of the registration requirement, we conclude that omission of a proper deposit copy with a copyright application renders the registration invalid and eliminates the federal courts' subject matter jurisdiction over an infringement claim. As we have previously recognized, most errors or mistakes in a copyright registration application will be inadvertent or immaterial, and thus will not invalidate the application (or any resulting certificate). Data Gen. Corp., 36 F.3d at 1161. In the rare instances where a plaintiff's registration was procured through

-22-

fraud or in the absence of a bona fide copy, such as occurred here, the registration becomes invalid and the federal courts lack jurisdiction over the case.

## D. **Procedure for Evaluating the Deposit Copy Requirement**

We recognize that there will be cases where determining whether the deposit copy was a bona fide copy or an impermissible reconstruction will depend on disputed facts. This is not the only context in which factual disputes may be critical in evaluating subject matter jurisdiction, and the procedures for dealing with such disputes are well-established. There are two types of challenges to a court's subject matter jurisdiction: facial challenges and factual challenges. "Facial attacks on a complaint 'require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [plaintiff's] complaint are taken as true for purposes of the motion.'" Scarfo v. Ginsberg, 175 F.3d 957, 960 (11th Cir. 1999) (quoting Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990)). However, when a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) involves factual questions,[8] the court engages in a two-part inquiry.

[8] In some instances, it may be unclear whether the defendant's motion to dismiss presents a facial or factual challenge to the court's subject matter jurisdiction.
> The general rule . . . is that a pleading's allegations of jurisdiction are taken as true unless denied or controverted by the movant. Thus, if the movant fails to contradict the pleader's allegation of subject matter

First, the court must determine whether the relevant facts, which would determine the court's jurisdiction, also implicate elements of the plaintiff's cause of action. See Garcia v. Copenhave, Bell & Assocs., 104 F.3d 1256, 1261 (11th Cir. 1997) ("On a factual attack of subject matter jurisdiction, a court's power to make findings of fact and to weigh the evidence depends on whether the factual attack on jurisdiction also implicates the merits of the plaintiff's cause of action."). "[W]here . . . 'the jurisdictional issue and substantive claims are so intertwined the resolution of the jurisdictional question is dependent on factual issues going to the merits, the district court should employ the standard applicable to a motion for summary judgment.'" Autery v. United States, 424 F.3d 944, 956 (9th Cir. 2005) (quoting Rosales v. United States, 824 F.2d 799, 803 (9th Cir. 1987)). Thus, where the relevant facts are dispositive of both the 12(b)(1) motion and portions of the merits, the trial court should grant the motion to dismiss "'only if the material jurisdictional facts are not in

<div style="border-top: 1px solid; width: 40%"></div>

> jurisdiction in his motion to dismiss [for lack of subject matter jurisdiction], then he is presumed to be challenging the pleading's sufficiency under Rule 8(a)(1), and the allegations of the pleading pertaining to jurisdiction are taken as true. But if the movant, either in his motion or in any supporting materials, denies or controverts the pleader's allegations of jurisdiction, then he is deemed to be challenging the actual existence of subject matter jurisdiction, and the allegations of the complaint are not controlling.

5 C. Wright & A. Miller, Federal Practice and Procedure, § 1363, at 653-54 (1969).

-24-

dispute and the moving party is entitled to prevail as a matter of law.'"  Trentacosta v. Frontier Pac. Aircraft Indus., Inc., 813 F.2d 1553, 1558 (9th Cir. 1987) (quoting Augustine v. United States, 704 F.2d 1074, 1077 (9th Cir. 1983)); see also Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).  If the plaintiff presents sufficient evidence to create a genuine dispute of material (jurisdictional) facts, then the case proceeds to trial, so that the factfinder can determine the facts, and the jurisdictional dispute will be reevaluated at that point.

Second, if the facts relevant to the jurisdictional inquiry are not intertwined with the merits of the plaintiff's claim, "the trial court may proceed as it never could under 12(b)(6) or [Federal Rule of Civil Procedure 56].  Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction — its very power to hear the case — there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990); see also Scarfo 175 F.3d at 961 (holding that whether the defendants in an employment discrimination case constituted an employer under Title VII was not an element of the cause of action, and thus the district court should weigh the evidence and find the facts necessary to resolve the 12(b)(1) motion).

-25-

In cases like this one, then, where the defendant makes a 12(b)(1) motion to dismiss, the parties should submit evidence, much as they would for a summary judgment motion, and the court should determine whether the dispute over the origins and validity of the deposit copy implicates the merits of the plaintiff's claim. In most cases involving a dispute as to the bona fide nature of the deposit copy, as is true here, the jurisdictional question should not implicate the merits because the physical process by which that copy was created is distinct and independent from the creative content and originality of the work (the questions underlying copyrightability). Nonetheless, the district court did not err by allowing the case to proceed to trial before concluding that the evidence overwhelmingly showed that Torres submitted a reconstruction rather than a bona fide copy to the Copyright Office.

**E. Summary**

In sum, we conclude that a reconstruction, created without first-hand access to the original, cannot constitute a "copy" sufficient to satisfy the deposit copy requirement in 17 U.S.C. § 408(b). Submission of a reconstruction with a copyright registration application results in an incomplete application, thus rendering the federal courts without jurisdiction over a copyright infringement claim. Where the parties dispute whether the deposit copy was bona fide, or was an impermissible reconstruction, the

-26-

district court should first determine whether that question implicates the merits of the case. If it does not, the court should weigh the evidence that is submitted and make a factual finding on the copy/reconstruction issue. If the jurisdictional facts and merits are intertwined, the court should treat a 12(b)(1) motion as a summary judgment motion and resolve it accordingly. Although the defendants could have filed a 12(b)(1) motion and the district court could have resolved the disputed facts and dismissed the claims earlier, its ruling after trial was correct in light of the evidence presented.

## III.

J & N has cross-appealed, arguing that the district court abused its discretion when it denied an award of attorney's fees to J & N. See 17 U.S.C. § 505 (allowing a court to award "a reasonable attorney's fee to the prevailing party" in a copyright action). The district court ordered judgment for J & N "without imposition of costs or attorneys' fees," but did not explain the reasons for its denial of fees. We affirm the district court's decision.

The Supreme Court has defined a "prevailing party" as one who has "prevailed on the merits of at least some claims," Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human

Res., 532 U.S. 598, 603-05 (2001).[9]  J & N cannot qualify as a prevailing party because it has not received a judgment on the merits.  See 4-14 M. Nimmer & D. Nimmer, Nimmer on Copyright § 14.10[B] ("[S]ince the Supreme Court's decision in [Buckhannon], it has been held that a prevailing party can only be one who 'secure[d] a judgment on the merits or a court-ordered consent decree.'" (quoting Chambers v. Time Warner, Inc., 279 F. Supp. 2d 362, 365 (S.D.N.Y. 2003))); see also Wages v. IRS, 915 F.2d 1230, 1234 (9th Cir. 1990) ("A jurisdictional dismissal is not a judgment on the merits." (citation omitted)); GHK Exploration Co. v. Tenneco Oil Co., 857 F.2d 1388, 1392 (10th Cir. 1988) ("[A] court-ordered dismissal for lack of subject matter jurisdiction is also not a decision on the merits . . . ."); cf. Davila v. Delta Air Lines, Inc., 326 F.3d 1183, 1188 (1st Cir. 2003) (stating that a dismissal for lack of subject matter jurisdiction "plainly is not an adjudication on the merits that would give rise to a viable res judicata defense").  Our decision, as described above, affirms the

---

[9] Buckhannon involved claims under the Fair Housing Amendments Act and the Americans with Disabilities Act, each of which has a fee-shifting provision allowing the "prevailing party" to collect attorney's fees.  532 U.S. at 601.  Despite the significant differences between the Copyright Act's fee-shifting provision, 17 U.S.C. § 505, and similar provisions in a variety of civil rights statutes, see 42 U.S.C. § 3613(c)(2) (FHAA), id. § 12205 (ADA), id. §2000e-5(k) (Civil Rights Act of 1964), id. § 1973l(e) (Voting Rights Act), id. § 1988 (Civil Rights Attorney's Fees Awards Act of 1976), the Court's definition of "prevailing party," based primarily on the Black's Law Dictionary definition of the term, applies in both contexts.  See Chambers v. Time Warner, Inc., 279 F. Supp. 2d 362, 365 (S.D.N.Y. 2003).

district court's entry of judgment solely on the basis of Torres' failure to comply with a statutory formality implicating the subject matter jurisdiction of the court. We have made no ruling on Torres' claims of infringement. Therefore, J & N has not prevailed on the merits of the copyright infringement allegations and is not entitled to a fee award under the statute.[10]

## IV.

For the reasons described above, we affirm both the judgment for J & N Records and the district court's denial of defendants' motion for fees and costs.

**So ordered.**

---

[10] In any event, J & N could not have prevailed in its challenge to the district court's ruling on attorney's fees. Such an award is discretionary, and although the court did not articulate the basis for its denial of fees, we can easily infer that fees were deemed inappropriate because of the difficult nature of the issues being litigated. Indeed, the reconstruction/copy issue was a question of first impression in this circuit.