# United States Court of Appeals
## For the First Circuit

No. 20-1550

TODDLE INN FRANCHISING, LLC,

Plaintiff, Appellee,

v.

KPJ ASSOCIATES, LLC; KATHIE L. MURPHY; PATRICK M. MURPHY; JAMES
O. HASKELL; KENNEBUNK CHILDREN'S ACADEMY, LLC; MURPHY-HASKELL
PROPERTIES, LLC,

Defendants, Appellants.

─────────────

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Jon D. Levy, U.S. District Judge]

─────────────

Before

Howard, Chief Judge,
Thompson, Circuit Judge,
and Katzmann, Judge.[*]

─────────────

Seth W. Brewster, with whom Micah A. Smart, John S. Bjorn,
and Eaton Peabody were on brief, for appellants.
Timothy J. Bryant, with whom Benjamin S. Piper and Preti
Flaherty were on brief, for appellee.

─────────────

August 11, 2021

─────────────

───────────

[*] Of the United States Court of International Trade, sitting
by designation.

**THOMPSON**, <u>Circuit Judge</u>.

### Stage-Setting

This case is about a business relationship gone sour.[1]

Starting in July 2006, KPJ Associates, LLC ("KPJ") ran a daycare in Kennebunk, Maine as a franchisee of Toddle Inn Franchising, LLC ("Toddle"). The contract between them covered many topics — not a surprise, given the realities of today's complex commercial world. A few illustrations suffice to make the point:

- The contract, for example, let KPJ use Toddle's system (identified by the federally-registered trademark "TODDLE INN"), which involved uniform standards, methods, and procedures for the daycare's operation.

- The contract also imposed a bunch of "don'ts" and "dos" on KPJ, to kick in when the agreement ended. The "don'ts" included not continuing to run the daycare under the contract; not continuing to use Toddle's system or confidential material (the latter term broadly defined to cover things like competitively-sensitive information); and not continuing

---

[1] Because today's appeal emanates from a motion to compel arbitration and stay federal-court proceedings, "we draw the relevant facts from the operative complaint and the documents submitted to the district court in support of" that "motion." <u>See</u> <u>Cullinane</u> v. <u>Uber Techs., Inc.</u>, 893 F.3d 53, 55 (1st Cir. 2018).

- 2 -

to hold itself out to the public (either directly or indirectly) as a Toddle franchisee. The "dos" included paying Toddle all sums owed, specifically listing damages, costs and expenses, and reasonable attorneys' fees.

- And the contract provided that all disputes be resolved by arbitration under the Federal Arbitration Act ("FAA"); that Toddle could sue for injunctive relief, despite the arbitration provision; and that Toddle could recover reasonable attorneys' fees and costs incurred in any legal action or other proceeding if a dispute arose.[2]

One Friday in July 2018, KPJ notified Toddle that it was ending the franchise agreement effective 6 p.m. and that it would open another daycare at the same site the following Monday. A none-too-pleased Toddle filed a federal complaint against KPJ that Tuesday, charging unfair competition under the federal Lanham Act, plus breach of contract and trade-secret misappropriation under Maine law.[3] Among other requests, Toddle asked for an injunction to stop KPJ from infracting the contract's post-termination provisions, for payment of "all sums owing to Toddle," and for reasonable attorneys' fees and costs. Toddle simultaneously moved

---

[2] We will quote the key parts of the contract as we move along (removing any excess capitalization, however).

[3] Toddle also sued KPJ's guarantors to the contract. But for simplicity, we refer only to KPJ.

- 3 -

for a temporary restraining order ("TRO"). And one of the arguments made in opposing the motion was that Toddle's Lanham Act claim could not succeed, because of Dastar Corp. v. Twentieth Century Fox Film Corp. ("Dastar"), 539 U.S. 23 (2003). After a hearing that same day, the judge denied the TRO motion, without discussing Dastar. (We, however, will have much to say about Dastar momentarily.)

Toddle moved a few weeks later to compel arbitration and stay court proceedings, arguing that the dispute came within the contract's arbitration clause. KPJ opposed, contending most relevantly that Toddle waived its right to compel arbitration by filing its action in federal court and asking for what amounts to damages, instead of pushing for arbitration from the get-go. KPJ also answered Toddle's complaint, raising as one of its affirmative defenses that Dastar barred "each and every" claim by Toddle. And KPJ counterclaimed for breach of contract, fraud, and unjust enrichment (among other claims), alleging (in part) that Toddle never gave it "any operating manual or training."

The judge ultimately compelled arbitration, after pertinently concluding that Toddle had not acted inconsistently with its arbitration rights, because the contract explicitly authorized Toddle to seek injunctive relief; and that KPJ would not be unfairly prejudiced by having to arbitrate, seeing how the

- 4 -

sides had not yet participated in any formal discovery. The arbitrator eventually found for Toddle, finding (for example) that KPJ had "misappropriated" parts of Toddle's system (including "its forms and policies," and "the distinctive look and feel of the Toddle . . . facility") and "made it appear that it was a seamless continuation from the prior Toddle . . . franchise." Rejecting KPJ's counterclaims, the arbitrator awarded Toddle $79,000 in compensatory damages and $145,852 in attorneys' fees and expenses. Back in federal court, Toddle then moved the judge to confirm the award, asking as well to recover additional attorneys' fees and expenses incurred in pressing this motion. KPJ objected, but only "insofar" as the motion sought extra attorneys' fees and expenses "not included in the arbitration award." And long story short, the judge confirmed the award, awarded the additional attorneys' fees and expenses, and entered judgment accordingly.

Which brings us to today, with KPJ's brief raising three legal theories for reversal. The first is that the judge (supposedly) lacked subject-matter jurisdiction because Toddle presented a frivolous Lanham Act claim, given Dastar.[4] The second

_____

[4] Subject-matter jurisdiction means the power to resolve the parties' dispute. See, e.g., Reyes-Colón v. United States, 974 F.3d 56, 58 (1st Cir. 2020). And one of the ways a federal court can get subject-matter jurisdiction over a case is through what is known as federal-question jurisdiction. See 28 U.S.C. § 1331 (granting federal district courts original jurisdiction over "all

- 5 -

is that Toddle (supposedly) waived its right to arbitrate by opting to litigate before demanding arbitration. And the third is that the judge (supposedly) had no right to award additional attorneys' fees and costs. Toddle finds none of these theories persuasive. Neither do we, for reasons we now explain.

### Jurisdiction

We start (as we must) with subject-matter jurisdiction, see Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998), considering the issue with fresh eyes ("*de novo*," in judge-speak), see Woo v. Spackman, 988 F.3d 47, 50 (1st Cir. 2021), and seeing if "a federal claim is made manifest within the four corners of [Toddle's] complaint," see Viqueira v. First Bank, 140 F.3d 12, 17 (1st Cir. 1998) — all while also accepting the complaint's facts as true and construing them in the light most sympathetic to Toddle, see Royal v. Leading Edge Prods., Inc., 833 F.2d 1, 1 (1st Cir. 1987). See generally Lawless v. Steward Health Care Sys., LLC, 894 F.3d 9, 17 (1st Cir. 2018) (underscoring that "the propriety of federal-question jurisdiction must be assayed based on 'what necessarily appears in the plaintiff's statement of [its]

---

civil actions arising under the Constitution, laws, or treaties of the United States").

- 6 -

own claim'" (quoting <u>Franchise Tax Bd.</u> v. <u>Constr. Laborers Vacation Tr.</u>, 463 U.S. 1, 10 (1983))).[5]

Toddle's complaint invoked federal-question jurisdiction via the Lanham Act (and supplemental jurisdiction over the state claims[6]) — as the parties agree, the FAA does not independently provide federal jurisdiction. <u>See</u>, <u>e.g.</u>, <u>Hall St. Assocs.</u> v. <u>Mattel, Inc.</u>, 552 U.S. 576, 581-82, 582 n.2 (2008). At the risk of oversimplification, the Lanham Act (so far as pertinent to this case) protects against consumer confusion over the source or sponsorship of goods or services. <u>See</u>, <u>e.g.</u>, <u>Dastar</u>, 539 U.S.

---

[5] Caselaw distinguishes between "facial" and "factual" subject-matter-jurisdiction attacks. <u>See</u> <u>Torres-Negrón</u> v. <u>J & N Records, LLC</u>, 504 F.3d 151, 162 (1st Cir. 2007). A facial attack contests jurisdiction based on well-pleaded allegations in the complaint — which a court takes as true. <u>Id.</u> A factual attack contests jurisdiction in fact, regardless of what the complaint says — and a court (broadly speaking, and according to "substantial authority") need not accept the plaintiff's allegations as true but can "weigh the evidence and satisfy itself as to the existence of its power to hear the case." <u>Id.</u> at 163 (quoting <u>Lawrence</u> v. <u>Dunbar</u>, 919 F.2d 1525, 1529 (11th Cir. 1990)). KPJ's attack is a facial challenge, what with its opening brief referencing the well-pleaded-complaint rule — which provides that a claim arises under federal law only if the federal question appears on the face of a properly pleaded complaint. <u>See</u> <u>Viqueira</u>, 140 F.3d at 17. KPJ's lead brief cites and quotes <u>Viqueira</u>, by the way (a case we cited above).

[6] A statute — 28 U.S.C. § 1367 — outlines "the supplemental jurisdiction of the federal courts, which is to say their jurisdiction over matters related to matters over which federal jurisdiction is explicitly conferred." <u>Lefkovitz</u> v. <u>Wagner</u>, 395 F.3d 773, 782 (7th Cir. 2005) (Posner, J., for the court).

at 31 n.4. And section 43(a) of the Lanham Act does that by creating a federal cause of action for anyone damaged by another's

> use[] in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . .

See 15 U.S.C. § 1125(a)(1) (also known as § 43(a) of the Act).

Trying to fit its case into the Lanham Act, Toddle's complaint alleged that KPJ deceived consumers by letting the public think it is not involved with Toddle, when actually it still used Toddle's system. Just consider these choice quotes, all lifted from Toddle's complaint:

- "KPJ has been informing customers that it would no longer be operating under the name TODDLE INN but stating that its services would otherwise remain the same."

- KPJ has told "parents . . . that all Toddle . . . contracts are carrying forward" and that KPJ "would keep all the same policies in place" at the Kennebunk locale, with "the name" being "the only thing changing."

- 8 -

- "Since termination, KPJ has competed unfairly with Toddle . . . at its TODDLE INN Kennebunk daycare center by holding itself out to the public as unaffiliated with Toddle . . ., when in fact it continues to use the Toddle . . . [s]ystem in providing daycare services" — as shown "by [KPJ's] carrying on the same manner of operations as [it] did prior to termination, in the same location, and with the same staff."

- "In so doing KPJ has confused, misled, and deceived the public as to the origin and affiliation of its services as a means of generating or retaining business."

Critically for our purposes, just because a complaint alleges a federal claim does not automatically mean that the district court has subject-matter jurisdiction. And that is because a court cannot consider "wholly insubstantial and frivolous" claims. See Bell v. Hood, 327 U.S. 678, 682-83 (1946); see also Lawless, 894 F.3d at 18. One way a claim can get tagged wholly insubstantial and frivolous is if it is "foreclosed by" Supreme Court precedent — *i.e.*, if the precedent "leave[s] no room for the inference that the questions sought to be raised" by the claim "can be the subject of controversy." See Hagans v. Lavine, 415 U.S. 528, 543 (1974) (quotation marks omitted); see also Hatch v. Town of Middletown, 311 F.3d 83, 84 n.2 (1st Cir. 2002). But — and it is a big "but" — the flipside is that Supreme Court

precedent "that merely render[s]" a "claim of *doubtful* or *questionable* merit" does not affect jurisdiction. See Hagans, 415 U.S. at 538 (emphasis added).

Put this all together, and only the most extreme cases will flunk this substantiality test. See Duke Power Co. v. Carolina Envtl. Study Grp., 438 U.S. 59, 70 (1978) (explaining that "the test is whether the cause of action alleged is *so patently without merit* as to" preclude jurisdiction (quotation marks omitted); see generally Boothby v. Soc. Sec. Admin. Comm'r, 132 F.3d 30, 1997 WL 727535, at *1 (1st Cir. 1997) (table) (collecting cases and stating that raising a colorable federal claim is hardly an "onerous" task). To again quote our judicial superiors:

> [T]he district court has jurisdiction if "the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another," unless the claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous."

Steel Co., 523 U.S. at 89 (citation omitted and quoting Bell, 327 U.S. at 682-83, 685). And given how charitable the substantiality standard is, it should come as no surprise that a plaintiff can successfully invoke federal jurisdiction and yet later lose on some other basis — like, say, failure to state a claim on which

- 10 -

relief may be granted.  See Shapiro v. McManus, 577 U.S. 39, 45 (2015); see also Bell, 327 U.S. at 682.

KPJ pins its reversal hopes on the idea that Dastar "directly and unequivocally" forecloses Toddle's Lanham Act claim. Call us unconvinced.

Dastar copied, edited, and sold a video series that relied entirely on footage from an older series whose copyright had expired — oh, and Dastar peddled the series as *its own*. See 539 U.S. at 25-27.  The question presented was whether Dastar made a "false designation of origin . . . which . . . is likely to cause confusion . . . as to the *origin . . . of* [Dastar's] *goods*." Id. at 31 (emphasis added and quoting 15 U.S.C. § 1125(a)(1)). Answering "no," the Supreme Court held that the italicized phrase — "origin of goods" — "refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication in those goods." Id. at 37-38.  Reduced to its essence, the Court's reasoning ran this way:  Congress passed the Lanham Act "to make 'actionable the deceptive and misleading use of marks,' and 'to protect persons engaged in commerce against unfair competition.'"  Id. at 28 (quoting 15 U.S.C. § 1127).  Because the Act was "not designed to protect originality" like patent and copyright laws, the Court thought that "hold[ing] otherwise would be akin to finding that § 43(a)

- 11 -

created a species of perpetual patent and copyright, which Congress may not do." Id. at 37. So "Dastar," as one court aptly put it,

> thus had the right (so far as the Lanham Act is concerned) to incorporate into its videos footage taken and edited by others, provided that it manufactured the finished product and did not mislead anyone about who should be held responsible for shortcomings.

Bretford Mfg., Inc. v. Smith Sys. Mfg. Corp., 419 F.3d 576, 580 (7th Cir. 2005).

Trying to shoehorn our case into Dastar, KPJ argues that Toddle is the "author" of the Toddle system — a "concept (or method) of running a daycare business," to quote KPJ's appellate papers. And, the argument continues, KPJ (emphasis ours) "took and used" the system Toddle "allegedly" developed, "made *modifications* . . . and produced its own materials, ideas, and programs" — much like Dastar did when it *modified* the original footage and produced its very own video series. Which means, at least in KPJ's mind, that Toddle's claim is essentially the same claim the Supreme Court rejected in Dastar.

The short and simple response, however, is that Toddle's complaint alleges nothing at all about KPJ's *modifying* the system. Not one word. Actually, the complaint alleges the exact opposite: that (for example, and as noted above) KPJ is running its new daycare with the *same* Toddle system, providing the *same* services at the *same* location and using the *same* staff. Given this

distinction between Toddle's Lanham Act claim and Dastar's, we cannot say that Dastar "*inescapably* render[s]" Toddle's "claim *frivolous*." See Hagans, 415 U.S. at 538 (emphasis added). So even if we had some doubts about Toddle's theory, Toddle's allegations are not such nonsense that they fail to raise a colorable federal claim under the not-difficult-to-meet substantiality standard. After all (and to use slightly different words than before), a "federal claim need not have merit . . . for the court to assume jurisdiction" — rather, the claim need only be "*seemingly* valid or genuine," and not "*wholly* insubstantial, immaterial, or frivolous." See Lawless, 894 F.3d at 18 (quotation marks and citations omitted, plus emphasis added). And that definition fits this situation exactly.

The bottom line then is that KPJ's Dastar-based theory does not help its cause.[7] And that is that for the jurisdiction issue.

---

[7] KPJ's opening brief seemingly faults the judge for not "independent[ly]" checking his "own subject-matter jurisdiction" before sending the dispute to arbitration — though KPJ admits that it "did not raise the [jurisdiction] issue" below. A judge's subject-matter-jurisdiction determination may be implicit as well as explicit, however. See United Seniors Ass'n, Inc. v. Philip Morris USA, 500 F.3d 19, 23 (1st Cir. 2007) (citing Baella-Silva v. Hulsey, 454 F.3d 5, 10 (1st Cir. 2006)). Conceding as much in its reply brief, KPJ asks us to "make an independent [*i.e.*, *de novo*] determination of whether federal subject matter jurisdiction exists" — a job we have just done.

- 13 -

## Waiver of Right to Arbitrate

We next address KPJ's charge that the judge erred in concluding that Toddle did not waive its right to arbitrate through its litigation conduct, giving fresh-eyed review both to the judge's "interpretation of the arbitration agreement" and to his "decision . . . to compel arbitration." See Ouadani v. TF Final Mile LLC, 876 F.3d 31, 36 (1st Cir. 2017).

The FAA backs "a liberal federal policy favoring arbitration agreements," see Moses H. Cone Mem'l Hosp. v. Mercury, 460 U.S. 1, 24 (1983), recognizing that arbitration provides a more simple and less costly way of resolving disputes than litigation, see Joca-Roca Real Estate, LLC v. Brennan ("Joca-Roca"), 772 F.3d 945, 949 (1st Cir. 2014). Like any other contract right, the right to arbitrate may be waived either explicitly or through an implicit course of conduct. But there is a strong presumption *against* inferring waiver — so strong that any "reasonable doubts as to whether a party has waived the right to arbitrate should be resolved in favor of arbitration." See In re Tyco Int'l Ltd. Sec. Litig. ("Tyco"), 422 F.3d 41, 44 (1st Cir. 2005).

As the party arguing waiver by conduct, KPJ bears the burden of showing more than a "mere delay," see Joca-Roca, 772 F.3d at 948 (quoting Creative Sols. Grp. v. Pentzer Corp., 252

- 14 -

F.3d 28, 32 (1st Cir. 2001)) — it must show at least a "modicum of prejudice" too, see Tyco, 422 F.3d at 44 (quoting Rankin v. Allstate Ins. Co., 336 F.3d 8, 12 (1st Cir. 2003)).  Factors to consider (though no single factor is controlling) include the extent of Toddle's "delay" in demanding arbitration, the degree to which Toddle "participated in the litigation," whether significant "discovery and other litigation-related activities" occurred, the "proximity" of Toddle's demand "to an anticipated trial date," and whether the arbitration referral "prejudiced" KPJ.  See Joca-Roca, 772 F.3d at 948.  So — and it (almost) goes without saying — this is an individualized inquiry, particular to each case's circumstances.  See Tyco, 422 F.3d at 46.

Toddle moved to compel arbitration 27 days after filing suit.  During that less-than-a-month stretch, Toddle sparred a bit with KPJ over the TRO issue[8] and asked KPJ to preserve evidence in KPJ's possession.  These hardly seem like the kind of foot-dragging delay tactics that are inconsistent with Toddle's right to arbitrate.  Just consider Joca-Roca.  The plaintiff there "commenced a civil action, vigorously prosecuted it, and then — after many months of active litigation — tried to switch horses midstream to pursue an arbitral remedy."  Joca-Roca, 772 F.3d at

---

[8] FYI, the TRO hearing lasted 47 minutes.

- 15 -

948.  We used "vigorously" and "active" as shorthand to describe how "[d]uring the . . . pretrial proceedings, the parties conducted sixteen depositions, propounded and answered interrogatories, and produced and exchanged thousands of pages of documents" — with a magistrate judge also holding "no fewer than four telephone conferences to resolve discovery disputes and scheduling conflicts."  Id. at 947.  And given all this, we had no trouble concluding that "the plaintiff's conduct evidenced a clear intent to forgo arbitration and resolve the disputed matter through litigation."  Id. at 949.[9]

KPJ spends time arguing that Toddle waived its right to arbitrate by pursuing injunctive relief in court.  True, as KPJ is quick to observe, the contract provides that "all disputes" will be arbitrated.[10]  But the contract also provides (our emphasis)

_____

[9] While Joca-Roca was an "open-and-shut" case of waiver and is not "alone . . . determinative," as KPJ notes, its analysis guides us — and KPJ offers no persuasive reason why Joca-Roca cannot help illuminate the path to decision.

[10] The arbitration clause pertinently says that

> [a]ll disputes between or among the parties whether now existing or arising in the future, including without limitation, any and all claims, defenses, counterclaims, cross claims, third party claims and intervenor claims, whether or not arising from or related to the negotiation, execution and performance of this agreement or the transaction to which this agreement relates shall be settled by arbitration under the [FAA] . . . .  The arbitrator may also award attorney[s'] fees as

- 16 -

that Toddle may pursue injunctive relief in court, "*notwithstanding* the arbitration clause."[11]  KPJ still urges us to find ambiguity, because the arbitration clause covers "all disputes."  The gaping hole in this argument is — as just noted — that the injunctive-relief clause unambiguously carves out an exception for injunctive relief.

Somewhat relatedly, KPJ accuses Toddle of impermissible forum shopping — taking the case to court and then asking for arbitration after losing on its TRO request.  But once again, the contract expressly permitted Toddle to seek injunctive relief in court before seeking arbitration.  Cf. Teradyne, Inc. v. Mostek Corp., 797 F.2d 43, 51 (1st Cir. 1986) (holding that a district judge "can grant injunctive relief in an arbitrable dispute pending arbitration," and explaining that "the congressional desire to enforce arbitration agreements would frequently be frustrated if the courts were precluded from issuing preliminary injunctive

---

set forth in [the attorneys' fees/costs clause].  The arbitrator shall have continuing jurisdiction to implement his/her decision.

[11] The injunctive-relief clause states that

[n]otwithstanding the arbitration clause . . ., [Toddle] may bring an action for injunctive relief in any court having jurisdiction to enforce [Toddle's] non-competition[,] trademark, and/or propriety rights, in order to avoid irreparable harm.

relief to preserve the status quo pending arbitration and, *ipso facto*, the meaningfulness of the arbitration process").

KPJ fares no better in arguing that Toddle waived its arbitration right by including a damages request in its complaint for injunctive relief. And that is because KPJ's lead brief offers no on-point case support for this theory. Which makes this claim a nonstarter, because "developing a sustained argument out of . . . legal precedents" is a party's job, not this court's. See Town of Norwood v. FERC, 202 F.3d 392, 405 (1st Cir. 2000); accord Díaz-Alarcón v. Flández-Marcel, 944 F.3d 303, 313 (1st Cir. 2019); see also Joca-Roca, 772 F.3d at 948 (highlighting that "[t]he party advocating waiver has the burden of demonstrating prejudice").

Undeterred, KPJ insists that it suffered prejudice because it had "to direct counsel to research and respond to [Toddle's] motion for temporary restraining order at an emergency hearing on the same day that motion was filed." Of course, if Toddle had asked for injunctive relief in arbitration, KPJ would have done exactly the same thing it did in the district court — "direct[ed] counsel . . . to respond." And KPJ's lead brief cites no authority suggesting that it can carry its prejudice burden through defense costs it would have suffered in any forum.

KPJ also argues that it was prejudiced because it was "forced to address informal written requests for discovery from

Toddle . . . while before the [d]istrict [c]ourt" and had to file an answer and counterclaims "tailor[ed]" to that forum. What KPJ complains about is simply the reality of dispute resolution, whether in arbitration or litigation. And KPJ's lead brief supplies no caselaw indicating that it can satisfy its prejudice burden by showing it had to do certain things in response to a suit Toddle had every right to file.

Nor does KPJ's claim that it was "required to operate [its] business under the specter of a public court case" change our minds — a claim that strikes us as odd, given that it is KPJ that is insisting that the case be tried in "public court." Anyway, KPJ's argument fails because Toddle had the right to seek injunctive relief in court.[12]

---

[12] KPJ's reply brief cites Rankin v. Allstate Ins. Co., 336 F.3d 8 (1st Cir. 2003), Cornell & Co. v. Barber & Ross Co., 360 F.2d 512 (D.C. Cir. 1966) (per curiam), and In re Citigroup, Inc., Capital Accumulation Plan Litig. ("Citigroup"), 376 F.3d 23 (1st Cir. 2004), as if they are silver bullets in its appeal. But unlike here, in Rankin a party did not invoke an arbitration clause "until after discovery had closed and the long-scheduled trial date had almost arrived." See 336 F.3d at 13. And unlike here, in Cornell & Co. "the litigation machinery had been substantially invoked" when a party tried to exercise its arbitration rights. See 360 F.2d at 513. And also unlike here, in Citigroup "[t]hree full years had elapsed between the filing of the complaint" and the motion to stay and compel arbitration — with lots of depositions taken and case-management conferences held. See 376 F.3d at 27. Put simply then, these cases are not difference-makers for KPJ.

So the judge did not err in ruling that Toddle did not waive its right to demand arbitration.

**Additional Attorneys' Fees and Costs**

We last consider KPJ's complaint that the judge slipped in awarding Toddle attorneys' fees and costs it incurred getting the arbitration award confirmed.  Ordinarily, we review such an issue for abuse of discretion — mindful that a material error of law is always an abuse of discretion.  See Spooner v. EEN, Inc., 644 F.3d 62, 66 (1st Cir. 2011); see also Janney Montgomery Scott LLC v. Tobin, 571 F.3d 162, 164 (1st Cir. 2009).  But KPJ disputes whether the judge had any discretion at all.  As KPJ sees it, only the arbitrator had the power "to determine whether, and in what amount, to award attorneys' fees and costs," and thus the judge's award of "additional fees and costs" cannot stand.  As framed, KPJ's attack is a legal issue that we review anew ("*de novo*," in legalese) — with us giving no deference to the district judge's views.  See Rivera-Rosario v. U.S. Dep't of Argric., 202 F.3d 35, 36-37 (1st Cir. 2000).

KPJ starts off talking up some nonbinding cases that say things like:

- "Absent statutory authorization or *contractual agreement* between the parties, the prevailing American rule is that each party in federal litigation pays his own attorneys'

fees." Menke v. Monchecourt, 17 F.3d 1007, 1009 (7th Cir. 1994) (emphasis added). (The significance of "contractual agreement" lingo will be clear shortly.)

- And "there is nothing in the [FAA] itself that would authorize a district court to go beyond confirming an arbitrator['s] award and independently award additional attorneys' fees." Id.

The problem for KPJ, however, is that the "contractual agreement" here says that Toddle's right to recover attorneys' fees and costs is *not limited* to arbitration proceedings, but *extends to* "any legal action or other proceeding" — including "appeals" and "post judgment proceedings."[13] Menke, unlike here, did not involve a contract provision supporting an attorneys' fees

---

[13] To quote the attorneys' fees/cost clause in full:

If [Toddle] brings any legal action or other proceeding for the enforcement of this [a]greement, or is forced to defend itself because of an alleged dispute, breach, default or misrepresentation in connection with any provision of this [a]greement, it shall be entitled to recover reasonable attorneys' fees, court costs and all expenses even if not taxable as court costs (including, without limitation, all such fees, costs and expenses incident to arbitration, appeals, bankruptcy and post judgment proceedings), incurred in that action or proceeding, in addition to any other relief to which [Toddle] may be entitled. Attorneys['] fees include paralegal fees, administrative costs and all other charges billed by the attorney.

- 21 -

and cost award — at least there is nothing to indicate that it did.

And the same goes for Schlobohm v. Pepperidge Farm, Inc., 806 F.2d 578 (5th Cir. 1986), Hannibal Pictures v. Les Films De L'Elysee, No. CV 12-6434 CAS (JCGx), 2012 WL 6608595 (C.D. Cal. Dec. 18, 2012), and Harkin v. G.W. Sargent-Builder, Inc., No. CV-03-233, 2005 WL 2727088 (Me. Super. May 18, 2005) — three other cases KPJ relies on. And Crossville Med. Oncology, P.C. v. Glenwood Sys., LLC (Crossville), 610 F. App'x 464 (6th Cir. 2015) — another of KPJ's supposedly favorable cases — does not improve KPJ's prospects for reversal. The contract there declared "that the prevailing party [in the arbitration] be awarded costs and attorneys' fees and the award be *entered as a judgment*." Id. at 468 (emphasis added). Convinced that that clause only "authorize[d] *an arbitrator* to award attorneys' fees and costs during *arbitration*, and authorize[d] the district court to enter the award as a judgment," Crossville said that the "[a]greement" there did "*not anticipate* an award of post-arbitration attorneys' fees for subsequent proceedings and litigation." Id. (last emphasis added). But our contract does "anticipate" that scenario, because (to repeat what we wrote moments ago, adding our emphasis) that document says that if Toddle "brings *any legal action* or other proceeding" to enforce the contract, "it shall be entitled to

- 22 -

recover reasonable attorneys' fees, *court* costs and all expenses even if not taxable as *court* costs (including, without limitation, all such fees, costs and expenses incident to arbitration, *appeals*, bankruptcy, and *post judgment proceedings*), incurred in that action or proceeding." And even Crossville suggests that contract language like "'any action at law . . . necessary to enforce the terms of this agreement'" — which substantially mirrors the language in play here — indicates "that the parties' contract anticipated the payment of costs incurred to confirm an arbitration award." See id. at 468-69 (discussing and quoting Sailfrog Software, Inc. v. Theonramp Grp., Inc., No. 97-7014, 1998 WL 30100 (N.D. Cal. Jan. 20, 1998)). So the decisions KPJ plays up are not game-changers (at least not for KPJ).

Still searching for a winning argument, KPJ contends (our emphasis) that because the contract forced the parties to arbitrate "[*a*]*ll* disputes," Toddle's "fee requests must likewise be submitted to the arbitrator." KPJ then circles back to the nonbinding Menke and Harkin decisions. In both cases, the at-issue contract said something like "the *entire* dispute was subject to arbitration," thus making any award of attorneys' fees and costs necessarily submitted to arbitration as well. See Harkin, 2005 WL 2727088, at *2 (emphasis added; discussing Menke). Also in both cases, the trial court found the FAA did not allow judges "to add

- 23 -

attorney[s'] fees to the award as part of a judgment confirming an award," because "do[ing] so would be to modify the award beyond the limited areas where modification is permitted by" section 11 of the FAA, see id. — which "allows a federal court to correct 'evident' and 'material' arithmetic or descriptive errors in arbitral awards," see Cytyc Corp. v. DEKA Prods. Ltd. P'ship, 439 F.3d 27, 33 n.3 (1st Cir. 2006) (quoting 9 U.S.C. § 11). From there, KPJ notes (quoting the contract) that the arbitration clause provides that "[t]he arbitrator may also award attorney[s'] fees as set forth in [the attorneys' fees/costs clause]." And this mention, according to KPJ (emphasis ours), "makes clear that an award pursuant to the [attorneys' fees/costs clause] is to be submitted to arbitration and is within the arbitrator's *sole* authority to decide."

But there is a flaw in KPJ's analysis. While the contract here *does* let the arbitrator make an award of attorneys' fees and costs, it *does not* say *only* the arbitrator can make such an award. Instead (and as we have been at pains to stress — at the risk of becoming tedious), the contract broadly provides (our emphasis) that Toddle "shall" recover attorneys' fees and costs in "*any legal action* or other proceeding for the enforcement of this [a]greement," listing as examples proceedings ("appeals," "post judgment proceedings," *etc.*) that are clearly judicial in nature

- 24 -

— without intimating even a possible hint of a suggestion that only the arbitrator can make such an award.  Which distinguishes the present case from the ones KPJ hypes.

The end result here is that the judge did not reversibly err in the way KPJ claims.

## Final Words

We affirm the district judge in all respects and award Toddle its appellate costs under Fed. R. App. P. 39(a)(2).