FILED
12/27/2022
Court of Appeals
Division I
State of Washington

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| CHARLES SCHWAB & CO, INC., a California Corporation, and INTERACTIVE BROKERS LLC, a Connecticut limited liability company | No. 83396-1-I |
| | DIVISION ONE |
| Respondents, | UNPUBLISHED OPINION |
| v. | |
| IRENE and PETER LEON GUERRERO, a married couple, JOANN and ROBERT LACANFORA, a married couple, BRANDON and NATASHA EHRLICH, a married couple, GARY and MARTHA WYATT, a married couple, CAROL and IAN HILTON, a married couple, TONY and CHRISTINE EASON, a married couple, DAVID and CARRIE MILLER, a married couple, EMILIE and BRYCE J. DAWSON, a married couple, NADINE DAWSON, a single person, HOLLY ROBINSON and BENJAMIN CAPDEVIELLE, a previously married couple, STEPHEN and DIANA NARAMORE, a married couple, EUGENE T. ROGERS and SHANNON A. MCQUERY, a married couple, PATRICIA HAMILTON, a single person, STEPHEN W. and PAMELA N. APT, a married couple, | |
| Appellants. | |

HAZELRIGG, J. — A group of retirement account holders, under the named plaintiffs Irene and Peter Leon Guerrero, appeal vacatur of their arbitration award by the superior court. Because Charles Schwab & Co., Inc. and Interactive Brokers LLC failed to demonstrate evident partiality on the part of one of the arbitrators, the panel, or the FINRA Director in terms of the remedy applied, we reverse.

FACTS

Irene and Peter Leon Guerrero are named plaintiffs representing a class of customers (collectively, the Customers) holding retirement accounts through investment firm Vita Intellectus, LLC (Vita).[1] Vita, on behalf of the Customers, opened brokerage accounts through Charles Schwab & Co., Inc. and Interactive Brokers LLC (collectively, the Brokers)[2]. After their accounts suffered "catastrophic losses," the Customers brought an arbitration action against the Brokers through Financial Industry Regulatory Authority (FINRA) Dispute Resolution Services pursuant to mandatory arbitration clauses in their agreements with the Brokers.

Based on FINRA procedure, the parties were provided with 35 arbitrator candidate disclosure reports in order to eliminate and rank candidates. The selected panel consisted of Katherine O'Neil, Pamela Bridgen, and David Gonzalez. Bridgen noted in her disclosure report that she was a plaintiff in an

---

[1] Vita was not a party to the arbitration.
[2] The Brokers' names alternatively appear on documents in the record as, "The Charles Schwab Corporation," "Charles Schwab Institutional," and "Interactive Brokers Group." As the record is unclear, we use the company names as contained in the plaintiffs' respective pleadings.

ongoing Consumer Protection Act (CPA)[3] claim related to real estate. The date when the disclosure report was first submitted pursuant to FINRA rules is unclear from the record, but it contains a statement in the header that the accuracy of its contents was last affirmed by Bridgen on December 5, 2019. After Bridgen was selected as an arbitrator for the Leon Guerrero dispute, she was required to review and sign an Arbitrator Disclosure Checklist, which she completed on March 13, 2020. In the section titled, "Disclosures about the subject of the case," item 4.a of the checklist asked, "Have you, your spouse, or an immediate family member been involved in a dispute involving the same or similar subject matter as the arbitration?" Bridgen selected, "No." Item 4.b asked, "Did the dispute assert any of the same allegations or causes of action as the assigned arbitration, even if the dispute was not securities-related?" Bridgen again selected, "No."

The arbitration was bifurcated into a liability phase and damages phase. The panel issued a liability ruling on December 15, 2020, finding the Brokers breached their respective contracts, were negligent, and violated Washington's CPA. The next day, the Brokers requested that FINRA remove and replace the panel, alleging they discovered a conflict Bridgen had failed to disclose. The Brokers testified they learned of the conflict the evening after the liability order was issued, but that their investigation was spurred by a comment Bridgen made the day before. The Customers did not oppose the request to replace Bridgen. The Director of FINRA Dispute Resolution Services granted the Brokers' request

---

[3] Ch. 19.86 RCW.

-3-

to remove Bridgen, pursuant to FINRA Rule 12407(b), but did not order removal of the rest of the panel after they declined to recuse themselves. The replacement arbitrator, Frederick Kaseburg, reviewed the record from the liability phase and joined the original two arbitrators for the damages phase. O'Neil and Gonzalez concurred in the award, but Kaseburg dissented from the damages award without explanation.

The Brokers filed a petition in King County Superior Court requesting vacatur of the arbitration award based on Bridgen's conflict and failure to disclose, and the Customers filed a counter-petition to confirm the award. The petitions were consolidated and, after oral argument, the trial court granted the Brokers' motion, vacating the award, and denied the Customers' petition to confirm the award. The Customers appeal.

ANALYSIS

I. Vacatur of the Arbitration Award

The parties agree that the Federal Arbitration Act (FAA)[4] governs their dispute as it pertains to securities transactions involving interstate commerce. In analyzing a federal question, this court gives "'great weight'" to decisions of federal appellate courts, but they are not binding. Feis v. King County Sheriff's Dep't, 165 Wn. App. 525, 547, 267 P.3d 1022 (2011). Review of an arbitration award is limited under the FAA. Lagstein v. Certain Underwriters at Lloyd's, London, 607 F.3d 634, 640 (9th Cir. 2010). An appellate court reviews the vacatur of an arbitration award de novo. Id. To obtain vacatur, a party "must

---

[4] 9 U.S.C. §§ 1-16.

clear a high hurdle. It is not enough for petitioners to show that the panel committed an error—or even a serious error." Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 671, 130 S. Ct. 1758, 176 L. Ed. 2d 605 (2010). Rather, a court may only vacate an award under certain circumstances, including "where there was evident partiality or corruption in the arbitrators." Lagstein, 607 F.3d at 640 (quoting 9 U.S.C. § 10(a)(2)). The party seeking vacatur bears the burden to demonstrate the award should be set aside. UBS Fin. Servs., Inc. v. Asociacion de Empleados del Estado Libre Asociado de Puerto Rico, 997 F.3d 15, 17 (1st Cir. 2021).

"Arbitration under the FAA is contract-driven and principally 'a matter of consent.'" Savers Prop. & Cas. Ins. Co. v. Nat'l Union Fire Ins. Co., 748 F.3d 708, 717 (6th Cir. 2014) (quoting EEOC v. Waffle House, Inc., 534 U.S. 279, 294, 122 S. Ct. 754, 151 L. Ed. 2d 755 (2002)). Parties are given discretion to design the framework of their arbitration process "'to allow for efficient, streamlined procedures tailored to the type of dispute.'" Id. (quoting AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 344, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011)). Additionally, we give weight to the rules regulating arbitrations as contracted for and relied on by the parties. See York Research Corp. v. Landgarten, 927 F.2d 119, 123 (2d Cir. 1991). Both of the Brokers urge this court to consider FINRA rules on disclosure as persuasive authority. In doing so, we would be remiss to not also consider FINRA rules as to the remedy for a disclosure violation as similarly persuasive authority.

By vacating the arbitration award, the trial court found that FINRA's remedy of removing Bridgen from the arbitration panel was insufficient. The only proper basis for vacatur of the arbitration award is evident partiality; either of the panel, as a whole or in part, or as to the FINRA Director's decision on a remedy. The Brokers sought a remedy within the contracted framework of arbitration and later sought to vacate the award, despite that earlier strategic choice. Thus, the Brokers are required to demonstrate evident partiality. By submitting a dispute to arbitration, instead of traditional litigation, "parties forgo the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution: lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes." Stolt-Nielsen S.A., 559 U.S. at 685. Courts are generally required "'to enforce the bargain of the parties to arbitrate,'" and judicial review is narrow "to prevent arbitration from becoming 'merely a prelude to a more cumbersome and time-consuming judicial review process.'" In re Sussex, 781 F.3d 1065, 1072 (9th Cir. 2015) (internal quotation marks omitted) (first quoting Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 217, 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985); and then quoting Oxford Health Plans LLC v. Sutter, 569 U.S. 564, 568-69, 133 S. Ct. 2064, 186 L. Ed. 2d 113 (2013)). Parties often select arbitration because the arbitrators are experts in their field. Commonwealth Coatings Corp. v. Continental Cas. Co., 393 U.S. 145, 150, 89 S. Ct. 337, 21 L. Ed. 2d 301 (1968) (White, J., concurring). Their experience in the marketplace makes them "effective in their adjudicatory function." Id. (White, J., concurring). The choice to pursue arbitration for dispute

resolution, based at least in part on the arbitrators' expertise in the field, necessarily includes a choice to follow the arbitrators' decisions about remedies and procedures within the framework of the parties' contracted-for arbitration.

The Brokers negotiated for FINRA rules and remedies in the event of a dispute with investors. FINRA Rule 12407(b) expressly states:

> After the first hearing session begins, the Director may remove an arbitrator based only on information required to be disclosed under Rule 12405 that was not previously known by the parties. The Director may exercise this authority upon request of a party or on the Director's own initiative. Only the Director may exercise the authority under this paragraph (b).

The issue the Brokers took with Bridgen was her nondisclosure and affirmative misrepresentation of her role in ongoing litigation of a similar subject to the dispute between the Customers and Brokers. Bridgen's suit was somewhat comparable to the controversy here; a customer brought a claim against a financial advisor for marketing an investment strategy as low risk, but which resulted in significant losses. However, a key distinguishing fact was that Bridgen filed suit against her financial advisor, not a brokerage firm. Additionally, unlike other cases where vacatur was upheld based on evident partiality, Bridgen did not have a relationship or connection to the Customers, Brokers, or firms representing them in arbitration. See, e.g., Monster Energy Co. v. City Beverages, LLC, 940 F.3d 1130, 1135-36 (9th Cir. 2019) ("under our case law, to support vacatur of an arbitration award, the arbitrator's undisclosed interest in an entity must be substantial, and that entity's business dealings with a party to the arbitration must be nontrivial"); Ploetz for Laudine L. Ploetz, 1985 Tr. v. Morgan Stanley Smith Barney LLC, 894 F.3d 894, 899 (8th Cir. 2018) (a decision on

vacatur on this basis turns "on whether the undisclosed relationship demonstrates that the arbitrator had evident partiality"); Positive Software Sol., Inc. v. New Century Mortg. Corp., 476 F.3d 278, 283 (5th Cir. 2007) ("in nondisclosure cases, an award may not be vacated because of a trivial or insubstantial prior relationship between the arbitrator and the parties to the proceeding"). In the absence of authority establishing that vacatur is proper where the sole basis for the claim of evident partiality is that an arbitrator has been involved in similar litigation, we decline to so hold.

FINRA applied the remedy of removing Bridgen for nondisclosure in violation of its rules and reconstituting the arbitration panel. This remedy was precisely one for which the Brokers negotiated by selecting arbitration under FINRA as part of the express terms of the contract. While they assert that Bridgen's participation in the liability stage of the arbitration tainted the panel, offering only Kaseburg's dissent in support of this claim, that is not the standard for vacatur of the arbitration award. Because the Brokers fail to allege evident partiality on the part of the FINRA Director as to the remedy decision, or the newly-constituted panel which issued the final award, they fail to meet their "high hurdle," and vacatur was improper. As such, we reverse and remand for entry of an order confirming the arbitration award.

II.    Attorney Fees

The Customers request attorney fees and costs incurred in connection with this appeal. Under RAP 18.1(a), a party may be awarded attorney fees "[i]f applicable law grants" the party the right to recover such fees. The Customers

contend they are entitled to attorney fees under the language of the contract and under the CPA, as two independent bases.

Charles Schwab counters that attorney fees are not available under the FAA and, therefore, there is no basis to recover fees. While it is correct that fees are not available under the FAA,[5] Charles Schwab ignores the Customers' request under the language of the contract and the CPA, and does not challenge either of those alternate bases.

Interactive Brokers argues that the Customers' claim is not an action "on a contract or lease," and therefore does not fall under the language of RCW 4.84.330, or, alternatively, that the contract provides only for indemnification rather than attorney fees. It additionally contends that the Customers did not receive a valid CPA award, or, if it was a valid CPA award, an action to confirm or vacate an arbitration award is not an appeal under the CPA. It provides no authority or analysis for the arguments against a fee award under the CPA, only presenting conclusory statements.

A party who is injured by a violation of RCW 19.86.020 may recover attorney fees, including fees on appeal. Ewing v. Glogowski, 198 Wn. App. 515, 526, 394 P.3d 418 (2017) (citing RCW 19.86.090). Interactive Brokers cites to Menke v. Monchecourt in support of its contention that the Customers are not entitled to fees under the CPA. See 17 F.3d 1007, 1009 (7th Cir. 1994). There, the court distinguished between a traditional civil appeal and a proceeding to confirm an arbitration award, holding that the party confirming the award was not

---

[5] See Toddle Inn Franchising, LLC v. KPJ Assoc., LLC, 8 F.4th 56, 66-67 (1st Cir. 2021) (holding that, while attorney fees are not generally available under the FAA, this does not necessarily preclude attorney fees under a contract provision or other statutory provision).

entitled to fees because of these distinctions.  Id.  It noted that, "Unlike the usual civil appeal, where the successful party is usually defending the lower court's decision on the merits, an action for confirmation under 9 U.S.C. § 9 is intended to be a summary proceeding that merely makes the arbitrators' award a final, enforceable judgment of the court."  Id.  The proceeding here, however, is distinct because the Customers defended against vacatur below and have now prevailed on appeal.  Because this proceeding was more than "a summary proceeding that merely makes" the award final, and, because Menke is a nonbinding federal decision interpreting an Illinois state statute, we decline to follow its reasoning.

Here, the arbitration panel found the Brokers had violated the CPA.  Because the Customers have demonstrated an entitlement to fees under the statute, we award fees pursuant to RAP 18.1.

Reversed and remanded for entry of an order confirming the arbitration award.[6]

WE CONCUR:

Andrus, C.J.

Dwyer, J.

---

[6] The Customers requested this court remand with instructions for the trial court to determine fees incurred in connection with the trial court proceedings; that request may be made to the trial court upon remand.  Similarly, the trial court may determine the amount of fees on appeal.